Edwin A. THOMAS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 29A05–0501–CR–29.

Court of Appeals of Indiana.

Jan. 20, 2006.

Transfer Denied April 6, 2006.

S. Neal Ziliak, Noblesville, for Appellant.

Steve Carter, Attorney General of Indiana, Matthew D. Fisher, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

ROBB, Judge.

Edwin Thomas was found guilty following a jury trial of six counts of child molesting as a Class A felony, six counts of child molesting as a Class C felony, and two counts of performance before a minor that is harmful to minors as a Class D felony. The trial court sentenced Thomas to forty years for each of his Class A felony convictions, six years for each of his Class C felony convictions, and three years for each of his Class D felony convictions. The trial court ordered that the Class A felony convictions should be served consec-

utively, that the Class C felony convictions should be served consecutively to one another but concurrently with the sentences for the Class A felonies, and that the Class D felony convictions should be served consecutively to one another and to the Class A felony sentences. The trial court suspended Thomas' sentences for his Class D felonies to probation. Thomas' aggregate sentence was two hundred and forty-six years with six of those years suspended. Thomas now appeals his convictions and his sentence. We affirm in part, reverse in part, and remand.

### Issues

Thomas raises four issues for our review, which we consolidate, reorder, and restate as follows:

1. Whether certain of Thomas' convictions violate his right under Article I, Section 14 of the Indiana Constitution to be free from double jeopardy;

2. Whether the trial court properly denied Thomas' motion for a mistrial; and

3. Whether the trial court properly sentenced Thomas.

### Facts and Procedural History

On February 19, 2003, the State filed a charging information alleging that Thomas committed sixteen counts of child molesting as a Class A felony, ten counts of child molesting as a Class C felony, and three counts of performance before a minor that is harmful to minors as a Class D felony. The State alleged that each of these offenses were committed upon Thomas' stepson D.N., who was born in 1991. Each of the sixteen counts of child molesting as a Class A felony read as follows:

On or between September 1997 and December 2001, [Thomas], a person of at least twenty-one (21) years of age, to-wit: between the ages of twenty-five (25) and twenty-nine (29) did perform or submit to sexual intercourse or deviate sexual conduct with [D.N.], a child under the age of fourteen (14) years, to-wit: between the ages of six (6) and ten (10) years of age.

Appellant's Appendix at 17–19. Eight of the ten counts of child molesting as a Class C felony were worded exactly the same and read:

On or between September, 1997 and December 2001, [Thomas] did perform or submit to fondling or touching with [D.N.], a child under the age of fourteen years, to-wit: between the ages of six (6) and ten (10) years of age, with the intent to arouse or satisfy the sexual desires of [Thomas] and/or [D.N.].

*Id.* at 19–20. In the two Class C felony counts that were not worded the same, the State alleged that Thomas fondled D.N. while he was between the ages of five and six. Two of the three counts of performance before a minor that is harmful to minors were worded the same and alleged that Thomas committed this offense by displaying and reviewing pornography via a computer before D.N. The third Class D felony count alleged that Thomas displayed and reviewed videotaped pornography before D.N.

Thomas' jury trial began on May 5, 2004. D.N. testified during the trial and began by recounting two incidents that occurred when he was five-years-old. The first incident involved Thomas fondling D.N. at a house located on Fourth Street in Sheridan, Indiana, while the second incident concerned Thomas fondling D.N. at the Sheridan Motel. Thomas objected to this testimony arguing that the crimes charged against him allegedly occurred while D.N. was between the ages of six and ten, and that this testimony was out-

side the relevant timeframe. The trial court overruled Thomas' objection.

D.N. went on to testify about several incidents with Thomas that occurred after he turned six-years-old. These incidents principally took place at two different locations, a house located on Georgia Street in Sheridan and a house located on Hannibal Street in Noblesville, Indiana. The first incident D.N. remembered occurring at the house on Georgia Street involved Thomas fondling his penis. In a second incident, Thomas fondled D.N.'s penis and then put his penis in D.N.'s mouth. During a third incident at the Georgia Street residence, Thomas made D.N. watch a pornographic videotape that showed a man and a woman having sex. Thomas then had D.N. get down on the floor, and he inserted his penis into D.N.'s anus. After sodomizing D.N., Thomas put his penis in D.N.'s mouth and ejaculated.

D.N. then proceeded to describe several incidents that occurred at the Hannibal Street residence. The first incident D.N. recalled occurred in the living room of the Hannibal Street residence. D.N. stated that Thomas fondled D.N.'s penis and then sodomized D.N. After this, Thomas had D.N. fondle his penis. D.N. then described a second incident that occurred in Thomas' office at the Hannibal Street house. D.N. related that Thomas turned on his computer and showed him some pictures of naked men and women having sex. Thomas then told D.N. to lie down on the floor, and he sodomized D.N. During a third incident at the Hannibal Street residence, D.N. testified that Thomas made him go into a bedroom where he fondled D.N.'s penis and then made D.N. fondle his penis.

After presenting its case in chief, the State filed a motion to dismiss four of the Class A felony counts and four of the Class C felony counts. The trial court granted the State's motion. Thomas then made a motion to dismiss all but four of the remaining counts, arguing that the remaining counts as charged violated his right to be free from double jeopardy under Article I, Section 14 of the Indiana Constitution. The trial court denied Thomas' motion. The State made a motion to amend the charging information, which the trial court granted over Thomas' objection. After a recess, the State submitted an amended information. The amended information charged Thomas with twelve counts of child molesting as a Class A felony, six counts of child molesting as a Class C felony, and three counts of performance before a minor that is harmful to minors as a Class D felony. The State orally moved to dismiss one of the Class D felony counts, and the trial court granted the motion. Thomas then made a motion for a mistrial arguing that he was prejudiced by the amendment of the charging information and by the State's introduction of evidence occurring prior to the dates listed on the charging information, namely those incidents occurring before D.N. was six-years-old. The trial court denied Thomas' motion for a mistrial.

The State's amended information was sent to the jury in the form of final jury instruction number twelve, which in relevant part reads:

Count 1: On or between September 1997 and December 2001, [Thomas] a person of at least twenty-one (21) years of age, to-wit: between the ages of twenty-five (25) and twenty-nine (29) did perform or submit to sexual conduct with [D.N.], a child under the age of fourteen (14) years of age, by placing his penis into the mouth of [D.N.] at a residence at 505½ S. Georgia St., Sheridan, IN.

Count 2: On or between September 1997 and December 2001, [Thomas] a

person of at least twenty-one (21) years of age, to-wit: between the ages of twenty-five (25) and twenty-nine (29) did perform or submit to sexual conduct with [D.N.], a child under the age of fourteen years, to-wit: between the ages of six (6) and ten (10) years of age, by placing his penis in the anus of [D.N.] at a residence at 505½ S. Georgia St., Sheridan, IN.

Count 3: On or between September 1997 and December 2001, [Thomas] a person of at least twenty-one (21) years of age, to-wit: between the ages of twenty-five (25) and twenty-nine (29) did perform or submit to sexual conduct with [D.N.], a child under the age of fourteen (14) years, to-wit: between the ages of six (6) and ten (10) years of age, by placing his penis in the mouth of [D.N.] at a residence at 505½ S. Georgia St., Sheridan, IN.

Count 4: On or between September 1997 and December 2001, [Thomas] a person of at least twenty-one (21) years of age, to-wit: between the ages of twenty-five (25) and twenty-nine (29) did perform or submit to sexual conduct with [D.N.], a child under the age of fourteen (14) years, to-wit: between the ages of six (6) and ten (10) years of age, by placing his penis in the mouth of [D.N.] at a residence at 505½ S. Georgia St., Sheridan, IN.

Count 5: On or between September 1997 and December 2001, [Thomas] a person of at least twenty-one (21) years of age, to-wit: between the ages of twenty-five (25) and twenty-nine (29) did perform or submit to sexual conduct with [D.N.], a child under the age of fourteen (14) years, to-wit: between the ages of six (6) and ten (10) years of age, by placing his penis in the anus of [D.N.] in the living room of a residence at 671 Hannibal Street, Noblesville, IN.

Count 6: On or between September 1997 and December 2001, [Thomas] a person of at least twenty-one (21) years of age, to-wit: between the ages of twenty-five (25) and twenty-nine (29) did perform or submit to sexual conduct with [D.N.], a child under the age of fourteen (14) years, to-wit: between the ages of six (6) and ten (10) years of age, by placing his penis in the anus of [D.N.] in the home office of a residence at 671 Hannibal Street, Noblesville, IN.

\* \* \* \* \* \*

Count 17: On or between September 1997 and December 2001, [Thomas] did perform or submit to fondling or touching the penis of [D.N.], a child under the age of fourteen (14) years, to-wit: between the ages of six (6) and ten (10) years of age, with the intent to arouse or satisfy the sexual desires of [Thomas] and/or [D.N.] at a residence at 505½ S. Georgia St., Sheridan, IN.

Count 18: On or between September 1997 and December 2001, [Thomas] did perform or submit to fondling or touching the penis of [D.N.], a child under the age of fourteen (14) years, to-wit: between the ages of six (6) and ten (10) years of age, with the intent to arouse or satisfy the sexual desires of [Thomas] and/or [D.N.] at a residence at 505½ S. Georgia St., Sheridan, IN.

Count 19: On or between September 1997 and December 2001, during an incident alleged in Count 5, [Thomas] did perform fondling/touching of the penis of [D.N.], a child under the age of fourteen (14) years, to-wit: between the ages of six (6) and ten (10) years of age with the intent to arouse or satisfy the sexual desires of [Thomas] and or [D.N.] in the living room of a residence at 671 Hannibal Street, Noblesville, IN.

Count 20: On or between September 1997 and December 2001, during an inci-

dent alleged in Count 5, [Thomas] did perform or submit to fondling/touching of the penis of [Thomas] by [D.N.], a child under the age of fourteen (14) years, to-wit: between the ages of six (6) and ten (10) years of age with the intent to arouse or satisfy the sexual desires of [Thomas] and or [D.N.] in the living room of a residence at 671 Hannibal Street, Noblesville, IN.

Count 21: On or between September 1997 and December 2001, during an incident alleged in Count 8, [Thomas] did perform or submit to fondling/touching of the penis of [D.N.], a child under the age of fourteen (14) years, to-wit: between the ages of six (6) and ten (10) years of age, with the intent to arouse the sexual desires of [Thomas] and/or [D.N.] in a bedroom of a residence located at 671 Hannibal St., Noblesville, IN.

Count 22: On or between September 1997 and December 2001, during an incident alleged in Count 8, [Thomas] did perform or submit to fondling/touching of the penis of [Thomas] by [D.N.], a child under the age of fourteen (14) years, to-wit: between the ages of six (6) and ten (10) years of age, with the intent to arouse the sexual desires of [Thomas] and/or [D.N.] in a bedroom of a residence located at 671 Hannibal St., Noblesville, IN.

Count 26: On or between September 1997 and December 2001, during an incident alleged in Count 6, [Thomas] did knowingly engage in or conduct a performance before minors, to-wit: [D.N.], displaying and reviewing pornography via computer in the home office of a residence at 671 Hannibal Street, Noblesville, IN, said performance being harmful to minors.

Count 27: On or between September 1997 and December 2001, during an incident alleged in Count 2, [Thomas] did knowingly engage in or conduct a performance before minors, to-wit: [D.N.], displaying and reviewing pornography on videotape at a residence at 505½ S. Georgia St., Sheridan, IN, said performance being harmful to minors.

*Id.* at 208–14. The jury found Thomas not guilty of six counts of child molesting as a Class A felony, but guilty of counts one through six, seventeen through twenty-two, and twenty-six and twenty-seven.

The trial court held a sentencing hearing on November 15, 2004. The court found the presence of two aggravating circumstances. The first aggravator found by the court was Thomas' criminal history, which included two convictions for operating a motor vehicle while intoxicated as a Class A misdemeanor and one conviction for battery as a Class B misdemeanor. The court also noted that while Thomas was incarcerated for the instant offense he had attempted to hire another inmate to murder D.N. and was now facing charges of conspiracy to commit murder. The second aggravator found by the court was that Thomas "regularly and frequently stood *in loco parentis* to the victim in this case." *Id.* at 421. The court specified that "[t]he factual evidence in this case is that you [Thomas] routinely provided care for the victim in this case in a parental capacity including transportation." Transcript at 970. The court found no mitigating factors. Relying upon the aggravating factors it found, the trial court ordered Thomas to serve enhanced sentences of forty years for each of his six Class A felony child molesting convictions, six years for each of his six Class C felony child molesting convictions, and three years for his two Class D felony convictions for performance before a minor that is harmful to minors. The trial court specified that the Class A felony convictions should be served consecutively, that the

Class C felony convictions should be served consecutively to one another but concurrently with the sentences for the Class A felonies, and that the Class D felony convictions should be served consecutively to one another and to the Class A felony sentences. The trial court suspended Thomas' sentences for his Class D felonies to probation, leaving him with an executed sentence of two hundred and forty years. This appeal ensued.

### Discussion and Decision

### I. Double Jeopardy

Thomas first argues that his convictions under Counts 1, 3, 4, 5, and 6 violated his rights under the Double Jeopardy Clause of the Indiana Constitution. Article I, Section 14 of the Indiana Constitution states that "[n]o person shall be put in jeopardy twice for the same offense." Our supreme court has held that two convictions are the "same offense" in violation of Article I, Section 14 of the Indiana Constitution if, "with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Richardson v. State*, 717 N.E.2d 32, 49 (Ind.1999).

Thomas contends that his convictions under Counts 1, 3, and 4 fail the statutory elements test announced in *Richardson*, and that Counts 5 and 6 also fail the statutory elements test. Counts 1, 3, and 4 all allege that while living at the Georgia Street residence in Sheridan, Thomas committed child molesting as a Class A felony by placing his penis in D.N.'s mouth. Counts 5 and 6 allege that while living at the Hannibal Street residence in Noblesville, Thomas committed child molesting as a Class A felony by placing his penis in D.N.'s anus, but Count 5 specifies that the offense occurred in the living room of the residence while Count 6 occurred in the home office.

"Where, as here, a double jeopardy challenge is premised upon convictions of multiple counts of the same offense, the statutory elements test of *Richardson* is inapplicable." *Minton v. State*, 802 N.E.2d 929, 937 (Ind.Ct.App. 2004), *trans. denied*. Therefore, in order to determine whether Thomas' rights under Article I, Section 14, were violated, we apply the actual evidence test announced in *Richardson*. In explaining the actual evidence test, our supreme court has stated:

Under this inquiry, the actual evidence presented at trial is examined to

determine whether each challenged offense was established by separate and distinct facts. To show that two challenged offenses constitute the "same offense" in a claim of double jeopardy, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense.

*Richardson*, 717 N.E.2d at 53.

We first consider whether the actual evidence used to convict Thomas under Count 1 was the same evidence used to convict him of child molesting under Counts 3 and 4. D.N. testified that while living at the Georgia Street residence in Sheridan, Thomas fondled D.N.'s penis and then put his penis in D.N.'s mouth. In a separate incident, D.N. stated that Thomas showed him a pornographic videotape. Thomas then sodomized D.N. and, after that, placed his penis in D.N.'s mouth and ejaculated. The evidence reveals two separate and distinct instances in which Thomas placed his penis in D.N.'s mouth.

D.N.'s testimony, though, does not reveal a third incident in which Thomas put his penis in D.N.'s mouth. In order to convict Thomas of Counts 1, 3, and 4, the jury must have relied upon the same evidence it used to convict Thomas under either Count 1 or Count 3 to convict him under Count 4. Therefore, Thomas' convictions under Counts 1 and 3 do not violate Article I, Section 14, but his conviction under Count 4 does and, consequently, must be vacated.

■ The next question is whether the evidence used to convict Thomas under Count 5 was the same evidence used to convict him under Count 6. D.N. testified that on one occasion in the living room of the Hannibal Street residence, Thomas placed his penis in D.N.'s anus. During a different incident occurring in the home office of the Hannibal Street residence, D.N. stated that Thomas put his penis in D.N.'s anus. The incidents alleged in Counts 5 and 6 were established by separate and distinct facts in that the incidents occurred in different rooms of the residence and at different times. Therefore, Thomas' convictions under Counts 5 and 6 do not violate Article I, Section 14.

### II. Motion for Mistrial

■ Thomas argues that the trial court abused its discretion when it denied his motion for a mistrial. A mistrial is an extreme remedy and is only warranted when no other measure will rectify the situation. *Harris v. State*, 824 N.E.2d 432, 439 (Ind.Ct.App.2005). The grant or denial of a motion for mistrial lies within the discretion of the trial court and will only be reversed for an abuse of discretion. *Randolph v. State*, 755 N.E.2d 572, 575 (Ind.2001).

To prevail on appeal from the denial of a motion for mistrial, the defendant must establish that the questioned information or event was so prejudicial and inflammatory that he was placed in a position of grave peril to which he should not have been subjected. The gravity of the peril is determined by considering the misconduct's probable persuasive effect on the jury's decision. *Harris*, 824 N.E.2d at 439 (citation omitted). We give deference to the trial court's decision to deny a motion for mistrial, as it is in the best position to gauge the circumstances and the probable impact on the jury. *Id.*

■ Thomas' motion for a mistrial rested on two arguments. First, Thomas argued that the trial court should grant his motion for a mistrial because the jury heard testimony from D.N. concerning incidents occurring prior to the dates listed on the charging information. The testimony in question concerned two incidents in which Thomas fondled D.N.'s penis. The first incident occurred at a house located on Fourth Street in Sheridan, while the second incident occurred at the Sheridan Motel. Both incidents occurred while D.N. was five years old. In its original charging information, in Counts 28 and 29, the State alleged that Thomas committed both of these acts, but specified that the acts occurred between September of 1997 and December of 2001. D.N. testified that he was born on September 10, 1991. Thus, Thomas is correct that the fondlings D.N. stated occurred at the Fourth Street residence and the Sheridan Motel when he was five years old occurred prior to September of 1997.

Thomas asserts that D.N.'s testimony concerning events that occurred prior to the dates listed in the charging information was barred by an order from the trial court granting his motion in limine, and, because of this, the trial court should have granted his motion for a mistrial. The trial court's order bars the admission of testimony pertaining to (1) allegations of

domestic batteries committed by Thomas on D.N.'s mother Amy Thomas; (2) reports of possible physical or sexual abuse by Thomas of his children L.T. and J.T.; (3) testimony of an incident occurring several years before the allegations made by the State in its charging information involving Thomas eating macaroni and cheese off of the penis of D.N.; (4) reports of any incident relating to child molesting charges filed against Thomas in Madison County; and (5) any reference to Thomas' prior criminal history. Nothing in the trial court's order granting Thomas' motion in limine bars testimony concerning Thomas' fondling of D.N. at the Fourth Street residence or the Sheridan Motel while D.N. was five-years-old, so a mistrial was not warranted by the admission of this evidence.

Regardless of whether D.N.'s testimony related to incidents occurring prior to the dates listed in the charging information, Thomas has not shown that D.N.'s testimony was so prejudicial and inflammatory that he was placed in a position of grave peril. D.N.'s testimony recounted two incidents in which Thomas fondled his penis. While these fondlings are not insignificant, their potential prejudice to Thomas was less than properly admitted testimony concerning Thomas placing his penis in D.N.'s mouth and anus. Therefore, the trial court did not abuse its discretion in denying Thomas' motion for a mistrial on this basis.

 Thomas also argued that the trial court should have granted his motion for a mistrial because the State's amendment of the charging information confused the jury and prejudiced him. The original charging information filed by the State contained twenty-nine counts, all of which lacked specific details like where the offense took place. All of the sixteen Class A felony child molesting charges and eight of the

Class C felony child molesting charges were worded exactly the same. The amended charging information contained only twenty counts and was more detailed. Each of the counts specified where the incident took place, with some even stating the room where the incident occurred. Some of the Class C felony charges were made more specific by stating whether it was Thomas who fondled D.N. or whether it was D.N. fondling Thomas at Thomas' order. Considering that the amended charging information contained fewer charges and more details, we fail to see how it confused the jury. If anything, the amended charging information made it easier for the jury to try the case. Thomas has not shown how the amendment of the charging information placed him in a position of grave peril. Therefore, the trial court did not abuse its discretion when it denied Thomas' motion for a mistrial.

### III. Sentencing

Thomas next contends that the trial court erred in sentencing him. We agree.

#### A. *Blakely*

Thomas argues that, pursuant to *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), the trial court's use of aggravating factors not submitted to a jury and proven beyond a reasonable doubt to enhance his sentences violated his Sixth Amendment right to trial by jury. In *Blakely*, the United States Supreme Court reaffirmed its holding in *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 2362–63, 147 L.Ed.2d 435, 455 (2000), that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." In *Smylie v. State*, 823 N.E.2d 679, 681–82 (Ind.2005), *cert. denied*, —— U.S. ——, 126 S.Ct. 545, 163

L.Ed.2d 459 (U.S.2005), our supreme court concluded that, pursuant to *Blakely*, portions of Indiana's sentencing scheme violate the Sixth Amendment's right to trial by jury. Our supreme court has explained that

> [u]nder *Blakely*, a trial court in a determinate sentencing system such as Indiana's may enhance a sentence based only on those facts that are established in one of several ways: 1) as a fact of prior conviction; 2) by a jury beyond a reasonable doubt; 3) when admitted by a defendant; and 4) in the course of a guilty plea where the defendant has waived *Apprendi* rights and stipulated to certain facts or consented to judicial factfinding.

*Trusley v. State*, 829 N.E.2d 923, 925 (Ind. 2005).

In sentencing Thomas, the trial court found two aggravating factors. The first was Thomas' criminal history, which included two convictions for operating a motor vehicle while intoxicated as a Class A misdemeanor and one conviction for battery as a Class B misdemeanor. Thomas' prior convictions do not implicate *Blakely* and are proper aggravating circumstances.

The second aggravating factor found by the trial court was that Thomas stood *in loco parentis* to D.N. during the period that the alleged incidents occurred. *In loco parentis* means in place of a parent. Black's Law Dictionary 787 (6th ed.1990). Based on this, we believe the trial court found that Thomas occupied a position of trust in D.N.'s life. We have previously held that abusing a position of trust can be a valid aggravating circumstance. *Singer v. State*, 674 N.E.2d 11, 14 (Ind.Ct.App.1996).

In finding Thomas guilty of child molesting as both a Class A and a Class C felony and of performance before a minor that is harmful to minors, the jury was not required to find that Thomas was in a position of trust. Thomas did not testify during his trial, and thus, never admitted that he was in a position of trust with regard to D.N. The presentence investigation report, though, indicates that at the time of the alleged incidents, Thomas was married to D.N.'s mother making him D.N.'s stepfather. At the sentencing hearing, the trial court asked Thomas whether he wanted to make any changes or corrections to the presentence report. Thomas offered several corrections but never challenged the fact that he was married to D.N.'s mother. Arguably, by failing to challenge the fact that he was D.N.'s stepfather, Thomas has admitted that he was in a position of trust. *See Chupp v. State*, 830 N.E.2d 119, 126 n. 12 (Ind.Ct.App.2005) (concluding that Chupp's failure to object or make any factual challenge to the presentence investigation report was tantamount to an admission to the accuracy of the facts contained therein).

However, our supreme court has recently cautioned that "using a defendant's failure to object to a presentence report to establish an admission to the accuracy of the report implicates the defendant's Fifth Amendment right against self-incrimination." *Ryle v. State*, 2005 WL 3378469, *3 n. 5 (Ind.2005). Bearing this in mind, we conclude that Thomas' failure to challenge the fact that he was married to D.N.'s mother does not constitute an admission that he was in a position of trust. Therefore, because the jury did not find and Thomas did not admit that he was in a position of trust, the trial court's reliance upon this fact to enhance Thomas' sentences violated Thomas' Sixth Amendment right to trial by jury.

**B. Enhancement of Sentences**

Thomas argues that the aggravating factors found by the trial court were

not of sufficient weight to justify enhancing his sentences. Sentencing decisions are within the discretion of the trial court and will only be reversed for an abuse of that discretion. *Wilkie v. State,* 813 N.E.2d 794, 799 (Ind.Ct.App.2004), *trans. denied.*

When a trial court imposes an enhanced sentence, it must identify all of the significant aggravating and mitigating factors, state the specific reason why each factor is considered aggravating or mitigating, and articulate its evaluation and balancing of those factors. A single aggravating factor is sufficient to justify an enhanced sentence.

*Id.* (citation omitted).

Here, the trial court only found one valid aggravating factor and found no mitigating factors. The lone aggravating factor was Thomas' criminal history, which consisted of two convictions for operating a motor vehicle while intoxicated as a Class A misdemeanor and one conviction for battery as a Class B misdemeanor. The trial court stated that Thomas' criminal history was not "of overwhelming weight ...." Appellant's App. at 421. Our supreme court has indicated that the significance of a defendant's criminal history as an aggravating factor " 'varies based on the gravity, nature and number of prior offenses as they relate to the current offense.' " *Cotto v. State,* 829 N.E.2d 520, 526 (Ind.2005) (quoting *Wooley v. State,* 716 N.E.2d 919, 929 n. 4 (Ind.1999)). Thomas' misdemeanor convictions are not related in kind or nature to the instant offenses. Therefore, the trial court correctly concluded that Thomas' criminal history was not entitled to substantial weight.

Because Thomas' criminal history is entitled to little weight and because the *in*

loco parentis aggravating factor found by the trial court was improper, the trial court erred in enhancing Thomas' sentences. Therefore, we remand this case to the trial court so that it can reduce each of Thomas' sentences to the presumptive sentence.[1]

### Conclusion

Thomas' convictions under Counts 1 and 3 do not violate Article I, Section 14, but his conviction under Count 4 does and must be vacated. Thomas' convictions under Counts 5 and 6 do not violate Article I, Section 14. The trial court did not abuse its discretion in denying Thomas' motion for a mistrial because Thomas did not show that he was placed in a position of grave peril. The trial court erred in enhancing Thomas' sentences because the *in loco parentis* aggravator violated Thomas' right to trial by jury under the Sixth Amendment, and because Thomas' criminal history was not of sufficient weight to justify an enhancement. We remand the case to the trial court so that it can vacate Thomas' conviction under Count 4 and reduce Thomas' remaining sentences to the presumptive sentence. Otherwise, Thomas' convictions are affirmed.

Affirmed in part, reversed in part, and remanded.

KIRSCH, C.J., and MAY, J., concur.

---

1. Thomas also argues that his sentence was inappropriate. We have already determined that the trial court erred in sentencing Thomas and have reduced his sentence accordingly. Therefore, we decline to address the appropriateness of Thomas' sentence.