**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 02 2013, 8:40 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**LISA M. JOHNSON**
Brownsburg, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHELLE E. BUMGARNER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DWIGHT A. WASHINGTON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1211-CR-559 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Lisa F. Borges, Judge
Cause No. 49G04-1008-FA-61823

**July 2, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Here, after the mother of two young girls died, their stepfather, appellant-defendant Dwight Washington, moved the family from Chicago to Indianapolis and began sexually abusing them. After the abuse became unbearable, one of the girls refused to come home one night and confided in the school principal about the abuse she was enduring from Washington. The girls and their brothers were immediately removed from Washington's home.

Washington was charged with eighteen counts that related to the sexual abuse he perpetrated on his stepdaughters, L.C. and K.B. Pertaining to L.C., Washington argues that the evidence is insufficient to sustain two counts of class A felony child molesting because she did not describe the acts with sufficient specificity. Additionally, he argues that his convictions violate the Double Jeopardy Clauses of the United States Constitution and the Indiana Constitution because the State failed to prove three separate and distinct acts of intercourse with L.C. as charged in Counts I, II, and III.

Regarding K.B., Washington argues that her testimony was incredibly dubious and inconsistent such that it was insufficient to sustain his conviction on Count XVIII, which alleged that he had engaged in sexual intercourse with K.B. Finding sufficient evidence and no double jeopardy violation, we affirm the judgment of the trial court.

FACTS

Washington was married to Antonia Conway-Jefferson, who had two daughters, L.C. and K.B. from previous relationships. The couple also had two sons, J.X. and D.W. Conway-Jefferson died in 2004, and Washington took the children and moved from

Chicago to Indianapolis. L.C. was eleven years old, and K.B. was ten years old when the family moved.

When L.C. was twelve, Washington had sexual intercourse with her for the first time. L.C. stated that it "hurted a lot . . . and it was so much blood." Tr. p. 288. When L.C. was still twelve, Washington came into her room late one night while she was watching television. Washington laid down with L.C. and had intercourse with her. According to L.C., Washington had intercourse with her "more than twenty times" while she was only twelve years old. Id. at 302.

When L.C. was thirteen, Washington threatened that if she ever told anyone about the abuse, she and her siblings would be separated, and she would be sent to an orphanage. Washington continued to question L.C. about whether she was having sex with anyone else and told her that he wanted to be her "lover." Tr. p. 304.

After a long period of abuse, L.C. refused to return home and spent the night in one of the other buildings in the family's apartment complex. L.C. returned to school the next day wearing the same clothes that she had worn the previous day. When Principal Rodney Steimel called L.C. to the office, he could tell that something "wasn't right" from the fact that she had not gone home the previous night and from her body language. Tr. p. 373-74.

L.C. then told Principal Steimel about the abuse that she was subjected to at home. Principal Steimel referred the situation to the school social worker, Kristina Ray-Bennett,

who observed that the girls suffered from post-traumatic stress disorder and depression. L.C., K.B., and the other children were placed into foster care that day.

After L.C. and K.B. had been in foster care for about three weeks, K.B. told her foster mother's niece that she too had been sexually abused by Washington and that he had had intercourse with her on many occasions. More particularly, K.B. stated, "I don't know why [L.C.'s] acting like that because, it happened to me too." Tr. p. 433. Indeed, K.B. revealed that Washington had engaged in intercourse with her as recently as the night L.C. had refused to return home. Washington had become frustrated and told K.B. that she needed to have intercourse with him to make it up to him.

In June 2010, L.C. and K.B. were both examined by a doctor. Although both girls were normal for their ages, the doctor testified that a normal examination does not confirm or negate an allegation of sexual abuse.

The sheets and the comforter from Washington's bed were collected and tested. The forensic lab discovered a considerable amount of biological material on the bedding, which was tested against the DNA reference samples from Washington, L.C., and K.B. The test results showed that Washington's semen was on the bedding. The testing also indicated that biological matter found on the bedding likely contained DNA from K.B. Additionally, L.C. could not be excluded as a contributor for two of the stains, and the results for two other stains were inconclusive as to L.C. One stain contained a mixture of Washington's semen and K.B.'s body fluid, possibly her blood; other spots contained the girls' skin cells. One stain included DNA from an unknown female.

4

According to the forensic lab technician, the DNA test results were not conclusive for sexual activity, insofar as a person's DNA can be deposited on bedding if that individual sits on or sleeps in the bed. L.C. testified that she sometimes went into Washington's bedroom to watch television or to use the computer.

On August 10, 2010, Washington was charged with Counts I through V and Count XVI, child molesting,[1] a class A felony; Counts VI, VII, VIII, X, XI, XVII, and XVIII sexual misconduct with a minor,[2] a class B felony; Counts XII through XV, child molesting,[3] a class C felony, and Count IX, child solicitation,[4] a class D felony. Washington's jury trial commenced on September 26, 2012, and after the presentation of evidence, the jury found him guilty on Counts I through VII, IX through XI and Count XVIII. The jury found Washington not guilty on Counts XII, XIII, XIV, and XVII. The jury was hung on Counts IV, XV, and XVI, and the State dismissed those Counts.

On October 26, 2012, Washington was sentenced to the Indiana Department of Correction (DOC) to fifty years each on Counts I, II, III, IV; twenty years each on Counts VI, VII, X, XI, and XVIII; and three years on Count IX. Counts I, II, III, and XVIII were ordered to be served consecutively to each other with the remaining Counts to be served

---

[1] Ind. Code § 35-42-4-3.

[2] I.C. § 35-42-4-9.

[3] I.C. § 35-42-4-3.

[4] I.C. § 35-42-4-6.

5

concurrently with all other Counts, for an aggregate sentence of 170 years executed. Washington now appeals.

## DISCUSSION AND DECISION

### I. Insufficient Evidence-Lack of Specificity

Washington first argues that there was insufficient evidence to sustain his convictions for child molesting on Counts III and V. The standard of review for sufficiency claims is well settled; this Court will neither reweigh the evidence nor judge the credibility of witnesses. Jackson v. State, 925 N.E.2d 369, 375 (Ind. 2010). Rather, we will consider only the evidence favorable to the trial court's verdict and all reasonable inferences therefrom. Alvies v. State, 905 N.E.2d 57, 61 (Ind. Ct. App. 2009). We will not reverse for insufficient evidence unless no rational fact finder could have found the defendant guilty beyond a reasonable doubt. Clark v. State, 728 N.E.2d 880, 887 (Ind. Ct. App. 2000).

### A. Count III – Class A Felony Child Molesting (12 years of age)

Washington argues that "L.C.'s testimony was sufficient to support the convictions for two of the three offenses alleged in counts one through three, but not all three." Appellant's Br. p. 18. Further, Washington claims that the State failed to otherwise present sufficient evidence to prove that three separate acts of intercourse occurred between June 6, 2006, and June 5, 2007, as alleged in Counts I through III.

Washington directs us to Baker v. State, where our Supreme Court, in addressing the larger issue of jury unanimity, focused on cases where evidence is presented that the

6

defendant committed a greater number of criminal offenses than he was actually charged with committing. 948 N.E.2d 1169, 1175 (Ind. 2011), reh'g denied. In such a scenario, our Supreme Court adopted the California Rule. Id. at 1177. More particularly, when the jurors may disagree regarding the particular act that the defendant committed, a standard unanimity instruction should be given. Id. However, if the victim testifies to undifferentiated occurrences of the same act, a modified unanimity jury instruction should be given. Id.

The reasoning behind the second part of the rule is that there is "'no reasonable likelihood of juror disagreement as to particular acts, and the only question is whether or not the defendant in fact committed all of them.'" Id. (quoting People v. Jones, 792 P.2d 643, 659 (Cal. 1990)). The California Supreme Court observed that the real issue in such cases is credibility – either the jury will believe the child's testimony that the pattern of abusive acts occurred or it will not. Id. But in any event, the defendant will have a unanimous jury verdict because if the jury believes that the defendant committed all of the acts, it necessarily believed the defendant committed each specific act. Id.

Here, the charging information for Counts I through III are identical, stating:

DWIGHT WASHINGTON, being at least twenty-one (21) years of age, on or about OR BETWEEN JUNE 6, 2006 AND JUNE 5, 2007, did perform or submit to sexual intercourse with L.C., a child who was under the age of fourteen (14) years, that is: TWELVE (12) years of age[.]

Appellant's App. p. 42. Thus, the State relied on the act of sexual intercourse in all three counts, and consequently, there could have been no juror disagreement regarding the particular act that Washington was alleged to have committed.

At trial, L.C. testified about the first time that Washington engaged in intercourse with her. She stated that she was twelve years old and that Washington had asked her to come into his bedroom to watch television with him. Tr. p. 288. Washington then told L.C. to "lay on top of him" and he started "rubbing [L.C.'s] private part on his." Id. Eventually, Washington engaged in intercourse with L.C., and when he was through, L.C. went to the restroom where she discovered that there "was so much blood." Id. When asked how often Washington had intercourse with L.C. while she was in the seventh grade, she responded, "sometimes it would be like once a week or every other day." Id. at 293.

L.C. then described the second time that Washington engaged in intercourse with her. L.C. testified that she was in her room watching a movie when Washington "just laid down with me and then had sex with me." Id. at 294. L.C. described the position she was in during this encounter and explained that she had been wearing a long shirt. Id. at 294-95. When L.C. was asked to estimate how many times while she was twelve that Washington had sexual intercourse with her, she responded "more than twenty times." Id. at 302. More than twenty times certainly encompasses three times, and L.C.'s testimony was sufficient to convict Washington of three counts of class A felony child molesting.

8

As an aside, we note that Washington fails to direct this Court to anything in the record suggesting that he either objected to the trial court's instructions or offered an instruction of his own requesting that the jury unanimously agree that he committed all the acts of intercourse described by L.C., namely, more than twenty acts of intercourse. Accordingly, this issue is waived. Baker, 948 N.E.2d at 1178 (stating that a failure to object or to tender a jury instruction results in waiver).

Although a waived issue can be reviewed if fundamental error is established, the fundamental error doctrine is extremely narrow. Mathews v. State, 849 N.E.2d 578, 587 (Ind. 2006). To be sure, it "applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." McQueen v. State, 862 N.E.2d 1237, 1241 (Ind. Ct. App. 2007).

In this case, as stated above, this issue turns on credibility. See Baker, 948 N.E.2d at 1179 (declining to find fundamental error after the defendant had failed to object to or offer his own jury instructions because the case turned on credibility which the jury decided in favor of the children). And the jury resolved this issue in favor of L.C.'s testimony that Washington engaged in a pattern of abusive acts, two of which she described in detail with which no twelve-year-old child should be familiar. Consequently, this argument fails.

## B. Count V – Class A Felony Child Molesting (13 years old)

Washington also argues that the evidence was insufficient to sustain his conviction on Count V because L.C. could not remember a specific act of sexual intercourse occurring while she was thirteen; she could only remember that it happened about twice each week between June 6, 2007, and June 5, 2008. Washington contends that although the State does not have to prove the exact date when a child was molested, there must be evidence of a specific incident and that "[g]eneric testimony that molestation occurred multiple times during a given period of time is not sufficient." Appellant's Br. p. 9.

During Washington's trial, while L.C. was testifying about what had occurred when she was thirteen, she was asked if she remembered Washington ever having intercourse with her when she was thirteen. Tr. p. 302-03. L.C. responded, "No. But I know he did. . . . But it just wasn't a time where – like a specific time that I can remember." Id. at 303.

L.C. was then asked about a school break, to which the defense objected, and the objection was sustained. L.C. was then asked if she was ever told not to tell. She answered that one night when Washington was on top of her, he told her to not tell anyone or her siblings would be separated, and she would go to an orphanage. Tr. p. 304. L.C. also testified that Washington had asked her if he was "the only person that [she was] having sex with[.]" Id. Washington told L.C. that he wanted to be her "lover." Id. L.C. was then asked if any of that made sense to her when she was thirteen. She responded, "No." Id.

10

From this line of questioning, namely, the prosecutor's questions to L.C. about intercourse with Washington when she was thirteen, followed by L.C.'s testimony regarding Washington's threats and desire to be her lover, immediately followed by the prosecutor asking her if any of it had made sense to her when she was thirteen, the jury could have reasonably inferred that a specific incident occurred when L.C. was thirteen. This is especially true in light of L.C.'s testimony that she knew Washington had intercourse with her when she was thirteen. Tr. p. 303. As discussed above, the issue is one of credibility, and the jury chose to believe L.C.

Again, Washington cites to <u>Baker</u> in support of his position. However, as stated above, Washington fails to direct us to anything in the record suggesting that he objected to or offered any jury instructions regarding jury unanimity, which was the crux of <u>Baker</u>. 949 N.E.2d at 1174 (recognizing the dilemma that a "victim's 'generic testimony' may describe a pattern of abuse . . . rather than specific incidents . . . . Thus a concern arises because the jury is not presented with a specific act upon which they unanimously agree"). Accordingly, this argument fails.

## II. Double Jeopardy

In a related argument, Washington next argues that his convictions on Counts I, II, and III violate the Double Jeopardy Clauses of the United States Constitution and the Indiana Constitution. Specifically, under the United States Constitution, Washington maintains that the State failed to prove three distinct acts of intercourse because L.C. only testified to two. Under the Indiana Constitution, more particularly under the actual

11

evidence test, Washington claims that there is a reasonable probability that the jury used the same evidentiary facts to establish the elements of all three counts.

A. United States Constitution

The Double Jeopardy Clause of the Fifth Amendment states: "nor shall any person be subject for the same offence to be twice put in jeopardy of or limb." There are several types of double jeopardy violations; however, Washington alleges a violation where a defendant has been charged with multiple counts of a single statutory provision. Specifically, as noted above, Counts I through III are identical.

To sustain all three convictions, the State was required to show that Washington committed three separate and distinct violations of Indiana Code 35-42-4-3. Blockburger v. U.S., 284 U.S. 299, 301-03 (1932). However, prohibitions against double jeopardy do not "insulate a criminal for punishment from subsequent offenses merely because he chooses to continue committing the same type of crime." U.S. v. West, 670 F.2d 676, 681 (7th Cir. 1982), overruled on other grounds.

As discussed above, L.C. gave detailed accounts of two instances of intercourse that Washington perpetrated on her when she was twelve. Tr. p. 288, 293-94. L.C. testified that Washington engaged in intercourse with her "more than twenty times" when she was twelve. Id. at 302. From this, the jury could reasonably conclude that Washington had committed the two specified acts of intercourse and at least one additional act of intercourse while L.C. was twelve. Thus, we cannot say that

12

Washington's convictions resulted in a violation of the Double Jeopardy Clause under the Fifth Amendment to the United States Constitution.

### B. The Indiana Constitution

Article I, Section 14 of the Indiana Constitution states that "[n]o person shall be put in jeopardy twice for the same offense." Our Supreme Court has held that two or more convictions are the "'same offense' in violation of Article I, Section 14 . . . if, with respect to <u>either</u> the statutory elements[5] of the challenged crimes <u>or</u> the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." <u>Richardson v. State</u>, 717 N.E.2d 32, 49 (Ind. 1999) (emphases in original).

Under the actual evidence test, multiple convictions constitute double jeopardy if there is "a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." <u>Id.</u> at 53. To determine which facts were used by the jury, a reviewing court will examine the charging information, evidence, arguments, and jury instructions. <u>Davis v. State</u>, 770 N.E.2d 319, 324 (Ind. 2002).

Here, as stated above, the charging information for all three counts was identical. Appellant's App. p. 42-43. As for the actual evidence presented at trial, Washington

---

[5] The statutory elements test is inapplicable where, as here, the double jeopardy challenge is based on multiple convictions of the same offense as defined by statute. <u>Thomas v. State</u>, 840 N.E.2d 893, 900 (Ind. Ct. App. 2006).

directs us to Thomas v. State, 840 N.E.2d 893 (Ind. Ct. App. 2006), in support of his position that the same evidentiary facts that were used to establish Counts I and II were also used to establish the elements of Count III.

In Thomas, there were two double jeopardy challenges under the Indiana Constitution. 840 N.E.2d at 900. The first one consisted of three counts alleging that the defendant had committed class A felony child molesting by placing his penis into the victim's mouth. Id. A panel of this Court determined that while the victim had described "two separate and distinct instances in which Thomas placed his penis in [the victim's] mouth," the victim's testimony did not reveal a third incident. Id. at 900-01. Therefore, a panel of this Court determined that one of the defendant's convictions must be vacated. Id. at 901.

By contrast, the second double jeopardy challenge involved two counts of class A felony child molesting by the defendant placing his penis into the victim's anus. Id. at 900. In this instance, the victim testified that on one occasion, the defendant placed his penis into his anus. Id. at 901. The victim also testified that the same act had occurred in a different room. Id. The panel concluded that the defendant's convictions for both of these acts did not violate double jeopardy because the victim's testimony established that they were separate and distinct acts. Id.

Turning to the instant case, L.C. testified that the first time Washington engaged in intercourse with her, she was twelve and that Washington had asked her to come into his bedroom to watch television with him. Tr. p. 288. As stated above, Washington then

14

told L.C. to "lay on top of him" and he started "rubbing [L.C.'s] private part on his." Id. Washington engaged in intercourse with L.C., and she testified that there "was so much blood." Id.

When asked how often Washington had intercourse with L.C. while she was in the seventh grade, she responded, "sometimes it would be like once a week or every other day." Tr. p. 293. L.C. then described the second time that Washington engaged in intercourse with her, stating that she was in her room watching a movie late at night when Washington "just laid down with me and then had sex with me." Id. at 294. L.C. described her position during this encounter and explained that she had been wearing a long shirt. Id. at 293-94. When L.C. was asked to estimate how many times Washington had engaged in sexual intercourse with her when she was twelve, she responded "more than twenty times." Id. at 302.

Here, L.C. described in great detail two instances in which Washington engaged in intercourse with her when she was only twelve. However, unlike in Thomas, where a panel of this Court vacated a third count of class A felony child molesting because the victim did not reveal a third incident, L.C. stated that Washington had intercourse with her more than twenty times when she was twelve and that sometimes it happened once a week or even every other day. Tr. p. 293, 302. Consequently, Washington's convictions do not violate Indiana's Double Jeopardy Clause.

Finally, Washington argues that the evidence was insufficient to support his conviction on Count XVIII, which alleged that Washington had committed class B felony sexual misconduct with a minor by engaging in sexual intercourse with K.B. when she was fourteen. Washington's sole argument is that K.B.'s testimony contains so many inconsistencies that his conviction on this offense should be barred under the incredible dubiosity rule.

The doctrine of incredible dubiosity allows a reviewing court to reevaluate the credibility of a witness when "a sole witness presents inherently improbable testimony and there is <u>a complete lack of circumstantial evidence</u>." <u>Fajardo v. State</u>, 859 N.E.2d 1201, 1208 (Ind. 2007) (emphasis added). The "[a]pplication of this rule is rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it." <u>Id.</u>

A defendant cannot appeal to this exception by merely showing some inconsistency or irregularity in a witness's testimony. <u>Cowan v. State</u>, 783 N.E.2d 1270, 1278 (Ind. Ct. App. 2003). Rather, a defendant must show that the witness's testimony "runs counter to human experience" such that no reasonable person could believe it. <u>Campbell v. State</u>, 732 N.E.2d 197, 207 (Ind. Ct. App. 2000).

In this case, K.B. testified that the day before the children were removed from the home was the last time that Washington had intercourse with her. Tr. p. 492. K.B. stated that Washington was angry because L.C. had not come home and it was late.

16

Washington told K.B. that she needed to "make it up to him," and she followed him into his room and "he had sex with [her]." Id. at 493.

Shannin Guy of the Indianapolis-Marion County Crime Lab, testified that DNA on Washington's bedding was "consistent with a mixture of the DNA profiles of Dwight Washington and K.B." Tr. p. 223. Additionally, Dr. Phillip Merck testified that K.B.'s physical exam did not rule out sexual abuse. Id. at 192.

Furthermore, Kristina Ray-Bennett, a school social worker, testified that K.B. suffered from post-traumatic stress disorder and depression. Id. at 457. Thus, insofar as Washington's conviction on Count XVIII was not based upon the testimony of a sole witness, and there was circumstantial evidence, the incredible dubiosity rule is inapplicable.

The judgment of the trial court is affirmed.

MAY, J., and MATHIAS, J., concur.