

ATTORNEY FOR APPELLANT

Latriealle Wheat
Angola, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Zachary J. Stock
Deputy Attorney General
Indianapolis, Indiana

# In the
# Indiana Supreme Court

No. 17S04-1009-CR-500

ELMER D. BAKER,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the DeKalb Superior Court, No. 17D01-0607-FA-007
The Honorable Kirk D. Carpenter, Special Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 17A04-0905-CR-299

**June 23, 2011**

**Rucker, Justice.**

After a conviction for three counts of child molesting the defendant appealed contending, among other things, that his convictions must be vacated because they were not the product of a unanimous jury verdict. We granted transfer to explore this issue.

**Facts and Procedural History**

On July 3, 2006 the State charged then fifty-nine-year-old Elmer Dean Baker with two counts of child molesting as Class A felonies. The victims of the alleged offenses were two of Baker's grandchildren, C.B. and J.A. And the offenses were alleged to have occurred in "June and July of 2003." Appellant's App. at 11. After a jury trial in June of 2007 the trial court declared a mistrial when the jury could not reach a verdict. Thereafter the State sought leave to amend the charging information to reflect the time period "from October 2000 through August 2003." Appellant's App. at 76, 78. An additional count of child molesting as a Class C felony was also added. The alleged victim was A.H., a cousin of C.B. who is unrelated to Baker. This offense was alleged to have occurred "in or about 2002." Appellant's App. at 80. Baker was also alleged to be a habitual offender.

Over Baker's objection the trial court permitted the amendments. And a retrial began on August 13, 2008. Evidence presented by the State is summarized in part as follows: C.B, who was eighteen years of age at the time of trial, testified that she was born in September 1990, Tr. 291; her cousin J.A. was born in December 1990, Tr. at 297; and that during the period between 2000 and 2003 she, J.A., and A.H. were close friends. Tr. at 297-98. C.B. also testified that during that period of time her family lived at various locations in DeKalb County including houses and apartments in Spencerville, Auburn, and Garrett, Indiana. According to C.B., Baker first began touching her inappropriately when she was about nine or ten years old. Tr. at 318. Specifically C.B. recounted an incident in which she and J.A. spent the night at Baker's apartment in Auburn which was next door to her own home where she lived with her parents. J.A. and C.B. were first sleeping in the living room but became frightened for some reason and went into Baker's room to lie down on his bed. C.B. testified that at that point "he started to touch us and he pulled me on top of him. . . . He [ ] pretended like he was having sex with me but we had, like I had my underwear on. . . . He like touched our vaginas." Tr. at 321. She went

on to say, "He like placed my hand on his penis and made like the motion of masturbating."  Id. at 322.

When C.B. was ten or eleven years old Baker, who was a long distance truck driver, often took C.B. with him on overnight truck trips several weekends during the summer months of 2001 and 2002.  According to C.B. most of the "sexual stuff" happened "in the semi" and it happened "a lot."  Tr. at 322, 326.  When asked by the prosecutor "what kind of stuff happened in the semi truck?"  C.B. responded "my grandpa had sex, my grandpa had sex with me."  Tr. at 324.  When asked "[w]hat other sex acts took place in the semi truck?"  C.B. recounted an incident in which she and J.A. were together on one of the truck trips and both of them fellated Baker; on another occasion Baker digitally penetrated her and touched her breast.  Tr. at 325.

By the summer of 2003 Baker owned a small house on Story Lake in DeKalb County.  At that point C.B. was twelve years of age.  On July 3rd of that year C.B. and J.A. were present for a family gathering and spent the night at Baker's house.  At some time during the course of the night C.B. and J.A. went into Baker's room and according to C.B. "[u]m, he had sex with me. . . . Um, he inserted his penis into my vagina."  Tr. at 334.  C.B. further testified, "he like touched us and had us touch him . . . on the private parts."  Tr. at 335.  The "us" referred to J.A.  Tr. at 335.  C.B. also testified that both she and J.A. "would take turns" fellating Baker.  Tr. at 335.

C.B. recounted another incident occurring at a trailer that Baker owned at the North Pointe Crossing Mobile Home park just north of where she lived in Garrett.  The precise date is unclear but the record suggests sometime between 2001 and 2003.  C.B., J.A., and A.H. were present at Baker's trailer.  The three girls went into Baker's bedroom where he pretended to be asleep.  Tr. at 345.  According to C.B. she and J.A. "took turns" fellating Baker, Tr. at 346; and all three of the girls "touch[ed] his penis."  Tr. at 347.

J.A., who was seventeen years of age at the time of trial, testified that C.B. is her step first cousin and that she refers to Baker as "Grandpa Dean."  Tr. at 545-46.  She also testified that during 2000 to 2003 she, C.B., and A.H. were good friends.  Tr. at 584.  She offered testimony that tended to corroborate that of C.B. including an incident involving A.H.

According to J.A. the three girls were present at Baker's house. Baker was present and pretending to be asleep. The three girls went into his bedroom where A.H. fellated Baker and J.A. played with his scrotum. "And then me and [A.H.] switched." Tr. at 567. She further recalled that C.B. was on top of Baker and he was "sucking on her [breast]." Tr. at 568.

A.H., who was also seventeen at the time of trial, was the third of the alleged victims to testify. Although no specific dates were given, A.H. largely corroborated the testimony of C.B. and J.A. concerning the alleged incident occurring at Baker's house at the mobile home park. Among other things she confirmed that C.B. fellated Baker, and "then [J.A.] did it and then after that I tried it." Tr. at 650. A.H. also recounted an occasion when she and J.A. were together on a trucking trip with Baker in his semi. The truck was equipped with a bed. While J.A. was in the passenger seat, A.H. went to sleep in the bed. A.H. testified that when she awoke Baker was lying next to her, and her clothing had been removed. Tr. at 653, 654. Baker rubbed his fingers over her "private area," got on top of her, and "humped [her] stomach until he ejaculated." Tr. at 654.

Baker testified on his own behalf. He acknowledged occasionally taking all of his grandchildren on semi trucking trips at one time or another, Tr. at 946, 963; and acknowledged owning a house on Story Lake. See generally Tr. at 963-65. However, Baker denied engaging in any sexual activity with C.B., J.A., or A.H. In response to his attorney's question "[a]nd you're saying to me that they are lying," Baker responded, "[t]hey absolutely are." Tr. at 950. Essentially he testified that he believed C.B. had organized the girls to offer false testimony as part of a conspiracy to get even with him after he caught C.B. in a car with a boy at three in the morning as a result of which "she got grounded." Tr. at 950. According to Baker, about two weeks later C.B. started a "rumor" about him engaging in inappropriate sexual activity. Tr. at 950.

Following a five-day jury trial Baker was convicted as charged, and he pleaded guilty to the habitual offender allegation. The trial court sentenced him to a consecutive term of imprisonment on each of the three child molest counts for a total of seventy-six years. One of

the counts was enhanced by thirty years for the habitual offender adjudication. The total executed term was 106 years.

Baker appealed framing his contentions as follows: (1) the convictions are not sustained by evidence of jury unanimity, (2) the trial court's ruling allowing amendment of the information was in violation of proscriptions under the state and federal constitutions against ex post facto laws; if the amendment can be lawfully applied in this case, it was not applied properly, (3) the trial court committed fundamental error in giving its preliminary instruction 6 and final instruction 5, and (4) defendant's convictions should be set aside due to ineffective assistance of counsel. Br. of Appellant at i. The Court of Appeals rejected Baker's arguments and affirmed the judgment of the trial court. See Baker v. State, 922 N.E.2d 723 (Ind. Ct. App. 2010), aff'd on reh'g, 928 N.E.2d 890 (Ind. Ct. App. 2010). We granted transfer to explore Baker's jury unanimity claim. In all other respects we summarily affirm the opinion of the Court of Appeals. See Indiana Appellate Rule 58(A)(2).

**Background**

Although the United States Supreme Court "has never held jury unanimity to be a requisite of due process of law," Johnson v. Louisiana, 406 U.S. 356, 359 (1972) (affirming a state robbery conviction based on a nine-to-three jury verdict),[1] this jurisdiction has long required that a verdict of guilty in a criminal case "must be unanimous." Fisher v. State, 291 N.E.2d 76, 82 (Ind. 1973) (rejecting argument that the trial court erred in instructing the jury that its verdict must be unanimous); Taylor v. State, 840 N.E.2d 324, 333 (Ind. 2006) ("[W]hile jury unanimity is required as to the defendant's guilt, it is not required as to the theory of the defendant's culpability.").

In general, the precise time and date of the commission of a child molestation offense is not regarded as a material element of the crime. Accordingly, this Court has long recognized "that time is not of the essence in the crime of child molesting. It is difficult for children to remember specific dates, particularly when the incident is not immediately reported as is often

---

[1] But see Richardson v. U.S., 526 U.S. 813, 817 (1999) (declaring "a jury in a federal criminal case cannot convict unless it unanimously finds that the Government has proved each element").

the situation in child molesting cases." Barger v. State, 587 N.E.2d 1304, 1307 (Ind. 1992) (citations omitted). Depending on the facts of a particular case, applying the rule of jury unanimity can present difficult challenges in charges of child molestation.

We find it useful to review a few scenarios, each with some relevance to the case before us, in which the issue of jury unanimity commonly arises in child sex offense cases. The first of these occurs when a young child is abused by "an abuser residing with the child . . . [who] perpetuate[s] the abuse so frequently . . . that the young child loses any frame of reference in which to compartmentalize the abuse into distinct and separate transactions. Such evidence of abuse has been termed generic evidence." See R.L.G. v. State, 712 So.2d 348, 356 (Ala. Crim. App. 1997) (internal quotation marks omitted). The victim's "generic testimony" may describe a pattern of abuse ("every time mama went to the store") rather than specific incidents ("after the July 4th parade"). Thus, a concern arises because the jury is not presented with a specific act upon which they unanimously may agree.

In response to this recurring problem, several jurisdictions have enacted criminal statutes that do not require evidence of particular incidents for prosecution. See, e.g., State v. Fortier, 780 A.2d 1243, 1249, 1250 (N.H. 2001) ("A continuous course of conduct crime . . . does not require jury unanimity on any specific, discrete act . . . . [O]ur legislature created [N.H. Rev. Stat. 632-A:2] to respond to the legitimate concern that many young victims, who have been subject to repeated, numerous incidents of sexual assault over a period of time by the same assailant, are unable to identify discrete acts of molestation.").[2] However, the Indiana legislature

---

[2] See also Cal. Penal Code § 288.5(a), (b) ("Any person who . . . over a period of time, not less than three months in duration, engages in three or more acts of substantial sexual conduct with a child under the age of 14 years . . . is guilty of the offense of continuous sexual abuse of a child . . . [;]" "To convict under this section the trier of fact, if a jury, need unanimously agree only that the requisite number of acts occurred not on which acts constitute the requisite number."); N.Y. Penal Law § 130.75 (1) ("A person is guilty of course of sexual conduct against a child in the first degree when, over a period of time not less than three months in duration: (a) he or she engages in two or more acts of sexual conduct . . . with a child less than eleven years old; or (b) he or she, being eighteen years old or more, engages in two or more acts of sexual conduct . . . with a child less than thirteen years old."); Tex. Penal Code Ann. § 21.02(b)(1), (d) ("A person commits an offense if: during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims . . . . [M]embers of the jury are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed.

has not adopted a statute criminalizing an ongoing pattern of sexual abuse when the victim is unable to reconstruct the specific circumstances of any one incident. We encourage the General Assembly to consider this issue.

Another source of concern stems from jury instructions that are delivered disjunctively or charging instruments that allege the defendant engaged in either "X" or "Y" behavior. In this regard, our jurisprudence has drawn a distinction between disjunctive instructions and charging instruments allowing for alternative *means* of committing an offense, versus alternative *separate criminal offenses.*

One of the well-established rules of criminal pleading is that there can be no joinder of separate and distinct offenses in one and the same count. <u>Vest v. State</u>, 930 N.E.2d 1221, 1225 (Ind. Ct. App. 2010). "A single count of a charging pleading may include but a single offense." <u>Townsend v. State</u>, 632 N.E.2d 727, 730 (Ind. 1994). Thus, a disjunctive instruction, which allows the jury to find a defendant guilty if he commits either of two or more underlying acts, either of which is in itself a separate offense, is fatally ambiguous because it is impossible to determine whether the jury unanimously found that the defendant committed one particular offense. <u>See, e.g.</u>, <u>Lainhart v. State</u>, 916 N.E.2d 924, 942 (Ind. Ct. App. 2009) (noting that by charging and arguing different victims, the State improperly joined several alternative crimes); <u>Castillo v. State</u>, 734 N.E.2d 299, 304 (Ind. Ct. App. 2000), <u>summarily aff'd on trans.</u> 741 N.E.2d 1196 (Ind. 2001) (vacating defendant's conviction on grounds that jury's verdict may not have been unanimous because "the State chose to charge Castillo with one act of dealing in cocaine even though there was evidence that Castillo committed two separate acts of dealing in cocaine").

By contrast "the State may allege alternative means or 'theories of culpability' when prosecuting the defendant for a single offense." <u>Vest</u>, 930 N.E.2d at 1225. In essence the State is permitted to "present[] the jury with alternative ways to find the defendant guilty as to *one element.*" <u>Cliver v. State</u>, 666 N.E.2d 59, 67 (Ind. 1996); <u>see also</u> <u>Taylor</u>, 840 N.E.2d at 333-34 ("It is settled that as long as each juror is convinced beyond a reasonable doubt that the

The jury must agree unanimously that the defendant, during a period that is 30 or more days in duration, committed two or more acts of sexual abuse.").

defendant is guilty of murder as that offense is defined by statue, it need not decide unanimously by which theory he is guilty.") (citation omitted).

In the context of cases where a defendant is charged with a single sexual offense, this Court has noted that because the crime of child molesting is committed if the defendant performs either sexual intercourse or deviate sexual conduct on a child, "[t]he charged crime of child molesting would be proven in the event of either of the alternative acts described in the statute." Tague v. State, 539 N.E.2d 480, 481-82 (Ind. 1989); see also State v. Hartness, 391 S.E.2d 177, 180 (N.C. 1990) (holding the crime of indecent liberties against a child is "a single offense which may be proved by evidence of the commission of any one of a number of acts").

Similar to the first noted concern, jury unanimity is also at issue where, as in the case before us, evidence is presented of a greater number of separate criminal offenses than the defendant is charged with. Jurisdictions have approached this problem in a variety of ways. See generally Cooksey v. State, 752 A.2d 606 (Md. 2000) (cataloging cases). The procedure most commonly followed to balance the need to prosecute cases involving repetitive acts charged in a single count with the defendant's assurance of jury unanimity has been described as the "either/or" rule. That is to say, the defendant is entitled *either* to an election by the State of the single act upon which it is relying for a conviction *or* to a specific unanimity instruction. For example, in State v. Petrich the defendant was charged with two counts of an offense that in this jurisdiction would amount to child molesting. At trial numerous incidents of sexual contact were described in varying detail. The defendant was convicted of both counts and on appellate review he contended, among other things, that the State's failure to elect the act upon which it relied for conviction deprived him of the right to a unanimous verdict. With respect to this contention the Washington Supreme Court reached the following conclusions:

> When the evidence indicates that several distinct criminal acts have been committed, but [the] defendant is charged with only one count of criminal conduct, jury unanimity must be protected. . . . The State may, in its discretion, elect the act upon which it will rely for conviction. Alternatively, if the jury is instructed that all 12 jurors must agree that the same underlying criminal act has been proved beyond a reasonable doubt, a unanimous verdict on

> one criminal act will be assured. When the State chooses not to elect, this jury instruction must be given to ensure the jury's understanding of the unanimity requirement.

683 P.2d 173, 178 (Wash. 1984)[3] (overruled on other grounds by State v. Kitchen, 756 P.2d 105 (Wash. 1988)). Some jurisdictions endorse this view. See, e.g., Covington v. State, 703 P.2d 436, 441 (Alaska Ct. App. 1985) (relying on the Petrich analysis and concluding "[i]n the instant case [charging multiple counts of sexual misconduct] the state did not elect specific incidents, nor was a clarifying instruction given") (clarified on reh'g, 711 P.2d 1183); State v. Arceo, 928 P.2d 843, 874-75 (Hawaii 1996) (agreeing with Petrich and holding where separate and distinct acts are subsumed within a single count of sexual assault, the prosecution is required to elect the specific act upon which it is relying to establish the "conduct" element of the offense, or the trial court must give the jury a specific unanimity instruction).

The California Supreme Court has adopted a slight variation of the either/or rule. In instances in which the State declines to make an election and the evidence indicates the jurors might disagree as to the particular act defendant committed, a standard unanimity instruction should be given. People v. Jones, 792 P.2d 643, 649 (Cal. 1990). Where, however, the

---

[3] In support of its conclusion the court observed:

> These options are allowed because, in the majority of cases in which this issue will arise, the charge will involve crimes against children. Multiple instances of criminal conduct with the same victim is a frequent, if not the usual, pattern. Note, The Crime of Incest Against the Minor Child and the States' Statutory Responses, 17 J. Fam. Law 93, 99 (1978-79). Whether the incidents are to be charged separately or brought as one charge is a decision within prosecutorial discretion. Many factors are weighed in making that decision, including the victim's ability to testify to specific times and places. Our decision in this case is not intended to hamper that discretion or encourage the bringing of multiple charges when, in the prosecutor's judgment, they are not warranted. The criteria used to determine that only a single charge should be brought [ ] may indicate that the election of one particular act for conviction is impractical. In such circumstances, [the] defendant's right to a unanimous verdict will be protected with proper jury instructions.

Id.

testimony of the victim recounts undifferentiated or generic occurrences of the sexual act, a modified unanimity jury instruction must be given because:

> [A]lthough a prosecutorial election or unanimity instruction can help focus the jury on the same specific act where evidence of several distinct acts has been elicited, nonetheless neither an election nor a unanimity instruction is very helpful where the victim is unable to distinguish between a series of acts, any one of which could constitute the charged offense. In a case consisting only of "generic" evidence of repeated sex acts, it would be impossible for the prosecutor to select a specific act he relies on to prove the charge, or for the jury to unanimously agree the defendant committed the same specific act.

Id. at 650. Therefore, the Court explained:

> [W]hen there is no reasonable likelihood of juror disagreement as to particular acts, and the only question is whether or not the defendant in fact committed all of them, the jury should be given a modified unanimity instruction which, in addition to allowing a conviction if the jurors unanimously agree on specific acts, also allows a conviction if the jury unanimously agrees the defendant committed all the acts described by the victim. . . . [In this latter situation], because credibility is usually the "true issue" [] the jury either will believe the child's testimony that the consistent, repetitive pattern of acts occurred or disbelieve it. In either event, a defendant will have his unanimous jury verdict and the prosecution will have proven beyond a reasonable doubt that the defendant committed a specific act, for if the jury believes the defendant committed all the acts it necessarily believes he committed each specific act.

Id. at 659 (internal quotation marks and citations omitted).

**Discussion**

In this case Baker contends that his three child molest convictions must be vacated because "the record provides no basis for a finding of jury unanimity for the verdict on any of those counts." Br. of Appellant at 13. Essentially Baker complains that although he was charged with one count of child molesting with respect to each alleged victim, the jury heard evidence of

multiple acts of molestation concerning each alleged victim. Thus, according to Baker, "[n]o one can read the record and have the slightest basis for saying that any of the verdicts were reached by twelve jurors all agreeing as to a particular incident." Br. of Appellant at 35. In essence he complains that some jurors may have relied on different evidence than the other jurors to convict on each of the three counts.

We adopt the reasoning of the California Supreme Court in Jones, supra and hold that the State may in its discretion designate a specific act (or acts) on which it relies to prove a particular charge. However if the State decides not to so designate, then the jurors should be instructed that in order to convict the defendant they must either unanimously agree that the defendant committed the same act or acts or that the defendant committed all of the acts described by the victim and included within the time period charged.[4] See also State v. Muhm, 775 N.W.2d 508,

_____

[4] A slightly modified version of the State of California jury instruction – titled "When Proof Must Show Specific Act or Acts Within Time Alleged" – provides a useful model for this jurisdiction:

> The defendant is accused [in Count[s] ___ ] of having committed the crime of _____, a violation of Indiana Code Section _____, on or about a period of time between _____ and _____.
>
> In order to find the defendant guilty, it is necessary for the State to prove beyond a reasonable doubt the commission of [here insert a specific act [or acts] constituting that crime] [all of the acts described by the alleged victim] within the period alleged.
>
> And, in order to find the defendant guilty, you must unanimously agree upon the commission of [here insert the same specific act [or acts] constituting the crime] [all of the acts described by the alleged victim] within the period alleged.
>
> It is not necessary that the particular act or acts committed so agreed upon be stated in the verdict.

See CALJIC 4.71.5 (West 2011).

The notes accompanying the instruction provide in pertinent part:

> Where the information charges an act or series of acts within a specified period and the prosecution has not elected to rely upon any specific date or dates, and the alleged criminal activity does not come within the continuous course of conduct exception, use this instruction . . . .

520 (S.D. 2009) (adopting the Jones Court's formulation of the "either or approach"); Thomas v. People, 803 P.2d 144, 153-54 (Colo. 1990) (adopting the reasoning of the Jones Court).

In the case before us, the State did not designate which specific act or acts of child molestation that it would rely upon to support the three-count charging information. But as noted above, the State was not compelled to do so. Concerning the unanimity requirement, the trial court instructed the jury in relevant part "Your verdicts must represent the considered judgment of each juror. In order to return a verdict of guilt or innocence you must all agree. . . . Upon retiring to the jury room the Foreperson will preside over your deliberations and must sign and date the verdicts to which you agree. Each verdict must be unanimous. . . ." Appellant's App. at 286-87 (Court's Final Instruction number 25).

It is clear that the foregoing instruction did not advise the jury that in order to convict Baker the jury must either unanimously agree that he committed the same act or acts or that he committed all of the acts described by the victim and included within the time period charged. However, Baker neither objected to the trial court's instruction nor offered an instruction of his own. This issue is waived. "[A] defendant who fails to object to an instruction at trial waives any challenge to that instruction on appeal." Mitchell v. State, 726 N.E.2d 1228, 1241 (Ind. 2000) (citing Ind. Trial Rule 51(C)). In like fashion the "[f]ailure to tender an instruction results in waiver of the issue for review." Ortiz v. State, 766 N.E.2d 370, 375 (Ind. 2002). We will review an issue that was waived at trial if we find fundamental error occurred. Bruno v. State, 774 N.E.2d 880, 883 (Ind. 2002). The fundamental error doctrine provides a vehicle for the review of error not properly preserved for appeal. In order to be fundamental, the error must represent a blatant violation of basic principles rendering the trial unfair to the defendant and thereby depriving the defendant of fundamental due process. Pope v. State, 737 N.E.2d 374, 380 (Ind. 2000). The error must be so prejudicial to the defendant's rights as to make a fair trial

> In a case in which the jurors might disagree as to the particular act [the] defendant committed, use the first bracketed phrase. When there is no reasonable likelihood of juror disagreement as to particular acts, and the only question is whether or not the defendant committed all of them, use the second bracketed phrase and delete the first.

Id.

impossible.  Id.  In considering whether a claimed error denied the defendant a fair trial, we determine whether the resulting harm or potential for harm is substantial.  Id.  Harm is not shown by the fact that the defendant was ultimately convicted.  Id.  Rather, harm is determined by whether the defendant's right to a fair trial was detrimentally affected by the denial of procedural opportunities for the ascertainment of truth to which he would have been entitled.  Id.

In this case the only issue was the credibility of the alleged victims.  The only defense was to undermine the young women's credibility by, among other things, pointing out inconsistencies in their statements, and advancing the theory that they were lying in retaliation for Baker getting C.B. into trouble.  Essentially "this case is about whether or not these kids will lie about [Baker] and make stuff up about him . . . ."  See State v. Muhm, 775 N.W.2d at 521 (internal citation omitted) (rejecting on harmless error grounds a claim that trial court erred in failing to give jury unanimity instruction in child sexual assault case where defendant requested no such instruction).  "Ultimately the jury resolved the basic credibility dispute against [Baker] and would have convicted the defendant of *any* of the various offenses shown by the evidence to have been committed."  See id. (emphasis in original).  We conclude Baker has not demonstrated that the instruction error in this case so prejudiced him that he was denied a fair trial.

**Conclusion**

We affirm the judgment of the trial court.

Shepard, C.J., and Dickson, Sullivan and David, JJ., concur.

13