**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jun 24 2014, 8:59 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MARK A. THOMA**
Leonard, Hammond, Thoma & Terrill
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CYNTHIA L. PLOUGHE**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| WILLIE J. WASHINGTON, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 02A03-1310-CR-427 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Frances C. Gull, Judge
Cause No. 02D05-1306-FC-205

June 24, 2014

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Willie J. Washington appeals his sentence for the offenses of corrupt business influence as a class C felony and twenty counts of forgery as class C felonies. Washington raises two issues which we revise and restate as:

I.      Whether the trial court abused its discretion in sentencing him; and

II.     Whether his sentence is inappropriate in light of the nature of the offense and the character of the offender.

We affirm.

## FACTS AND PROCEDURAL HISTORY

During the summer of 2012, Washington prepared counterfeit payroll checks. The names of the companies listed as payors on the forged checks, which were chosen by Washington, included Bain, Tower, and Master Spa. Angela Fett knew Washington and she recruited others to cash the forged checks. Washington told Fett to give the person that actually went into the stores $125 for each check that they cashed. Fett took her crew to Kroger and Walmart to cash the checks because Washington "said that they are the only ones that would read their – whatever was in their register would – some of the ones would read the account numbers at the bottom." Transcript at 88. Washington also told Fett to cash the checks on Friday after 5:00 because the stores would be busy with a large number of checks being cashed. At some point in 2012, Kathy Fox, the district loss prevention manager for the Kroger Company, learned that some counterfeit payroll checks with Bain listed as the payor were cashed at Kroger stores.

2

During the summer of 2012, Lieutenant Timothy Selvia of the Fort Wayne Police Department began investigating reports of forged and counterfeited payroll checks. These counterfeit checks were being cashed at Kroger, Walmart, Summit Markets, City Markets, and Save-A-Lot. The investigation led to the arrest of a woman who admitted her involvement and stated that her "crew leader" was a woman by the name of "Angie." Id. at 130. Lieutenant Selvia eventually learned the person's identity to be Fett. During the course of the investigation, Lieutenant Selvia was able to link a little over forty checks with the organization in which Fett was the crew leader.

After Fett was charged, she informed police that she wanted to make a statement. Fett stated that Washington was always the one who provided her with the forged, counterfeit checks, and that he "was still contacting [her] about putting another crew together to pass more forged or counterfeit checks." Id. at 91. Fett agreed to cooperate with the investigation of Washington.

On June 13, 2013, police provided Fett with a list of fictitious names, and she copied the names in her own handwriting. Fett then telephoned Washington, and he told her to drop off the list of names at his mother's house on South Hanna Street. Police searched Fett and her vehicle before following her to the South Hanna Street address. At the address, Fett remained in her vehicle while Washington left the home and approached Fett's vehicle. Fett handed Washington the list of fictitious names. Washington instructed Fett to return to pick up the forged and counterfeited checks in a couple of hours. Washington sent Fett a text message informing her that the checks were ready, Fett then returned to Washington's

3

location, and Washington gave her an envelope containing twenty counterfeit checks that listed Book Daddy Enterprises as the payor. Fett later handed the envelope to Lieutenant Selvia.

A search warrant was executed at the South Hanna Street address. A laptop computer, a desktop computer, a couple of printers, a couple of cell phones and various multi-media storage devices were confiscated. Several images of payroll checks, signatures from payroll checks, and logos from payroll checks were found on the desktop computer. Included among the check images were logos or specific checks of businesses. Also found on the computer were several signatures, including one for "Lisa Marger," a name which appeared on each of the forged, counterfeit checks Washington gave to Fett on June 13, 2013. Id. at 160; State's Exhibits 9-28.

The State charged Washington with Count I, corrupt business influence as a class C felony for his acts between June 1, 2012, and June 14, 2013; and Counts II through XXI, forgery as class C felonies for his acts on June 13, 2013. A jury found Washington guilty as charged. At the sentencing hearing, the court noted Washington's criminal record and his failed efforts at rehabilitation as aggravating factors, and noted there were multiple victims of Washington's offenses. The court found no mitigating factors and sentenced Washington to eight years for Count I, corrupt business influence as a class C felony, and six years on each of Counts II through XXI, forgery as class C felonies. The court ordered that the sentence for Count II be served consecutive to Count I and that Counts II through XXI be served concurrent with each other for an aggregate sentence of fourteen years.

DISCUSSION

I.

The first issue is whether the trial court abused its discretion in sentencing Washington. Washington argues that the court abused its discretion and violated Ind. Code § 35-50-1-2 when it imposed consecutive sentences.

Ind. Code § 35-50-1-2(c) provides:

> [E]xcept for crimes of violence, the total of the consecutive terms of imprisonment, exclusive of terms of imprisonment under IC 35-50-2-8 and IC 35-50-2-10, to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the advisory sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted.

An "episode of criminal conduct" means "offenses or a connected series of offenses that are closely related in time, place, and circumstance." Ind. Code § 35-50-1-2(b). "In making this determination, emphasis has been placed on the timing of the offenses and the simultaneous and contemporaneous nature, if any, of the crimes." Gootee v. State, 942 N.E.2d 111, 114 (Ind. Ct. App. 2011) (citing Reed v. State, 856 N.E.2d 1189, 1200 (Ind. 2006)), trans. denied. "Additional guidance on whether multiple offenses constitute an episode of criminal conduct can be obtained by considering whether the conduct is so closely related in time, place, and circumstance that a complete account of one charge cannot be related without referring to details of the other charge." Id.

Washington argues that the convictions are part of an episode of criminal conduct and that the total term of imprisonment shall not exceed ten years which is the advisory sentence

for a class B felony, one class of felony higher than the most serious of the felonies for which he was convicted. He mentions the rule of unanimity and argues that, without any specific jury instructions or findings, there is no way to know which activities the jury concluded made up the "pattern of racketeering" element of the corrupt business influence charge. Appellant's Brief at 7. Washington does not challenge any of his convictions. Rather, he challenges only his sentence to the extent the court imposed consecutive sentences on Counts I and II for an aggregate sentence of fourteen years and requests that we reduce his sentence to ten years or less.

The State argues that the convictions involved much more criminal activity than merely creating counterfeit checks, that there was a pattern of racketeering activity which served as the basis of his conviction for Count I, corrupt business influence as a class C felony, and it is distinctly different criminal activity than the simple manufacturing of counterfeit checks.

To the extent that Washington argues that the rule of unanimity should be applied to this sentencing issue and that it is impossible to know if the jury used one of the forgery charges from June 13, 2013 as a predicate offense for the corrupt business influence conviction, we observe that Washington does not point to the record to show that he objected to the court's instructions or offered an instruction of his own. Accordingly, this issue is waived. See Baker v. State, 948 N.E.2d 1169, 1178 (Ind. 2011) (holding that the defendant waived the issue of jury unanimity when the defendant neither objected to the trial court's

6

instruction nor offered an instruction of his own), reh'g denied. We also observe that Washington does not develop any argument under fundamental error.

With respect to Washington's challenge to the consecutive aspect of his sentence, we observe that Washington's counsel stated at the sentencing hearing: "*I think Counts I and II can be run consecutive*, but I think the rest of the forgeries would need to be run concurrent because as the testimony was at trial, he handed one envelop[e] with all those checks." Sentencing Transcript at 6-7 (emphasis added). Moreover, our review of Washington's offenses reveals that Washington's corrupt business influence offense and twenty forgery offenses did not constitute an episode of criminal conduct. We observe that the State alleged in Count I, corrupt business influence:

> Sometime during the period of time between the 1st day of June, 2012 and the 14th day of June, 2013, . . . [Washington], while associated with an enterprise, to wit: a group of individuals associated in fact, did knowingly or intentionally conduct or otherwise participate in the activities of the enterprise through a pattern of racketeering activity, involving obtaining, or attempts to obtain, cash from local retail establishments through the uttering of forged payroll checks .
> . . .

Appellant's Appendix at 33. The State alleged in Count II, forgery, that:

> On or about the 13th day of June, 2013, . . . Washington, did, with intent to defraud, make, utter or possess a written instrument, to wit: check #10079, in such a manner that it purports to have been made by authority of Book Daddy Enterprises or Lisa Marger, who did not give authority, being contrary to the form of the statute in such case made and provided.

Id. at 34.[1]

---

[1] Counts III through XXI each alleged a different check number and all related to the checks written on June 13, 2013.

Fett testified that during the summer of 2012, Washington prepared counterfeit payroll checks and chose the names of the payors on the forged checks. The names of the payors on these checks included different entities than the checks he delivered on June 13, 2013. The events that took place in the summer of 2012 can be recounted without referring to his delivery of checks on June 13, 2013. Based upon the record and evidence, we cannot say that the trial court abused its discretion in finding that Washington's offenses did not constitute an episode of criminal conduct and in ordering that Washington serve his sentences for Count I and Count II consecutive to each other. See Gootee, 942 N.E.2d at 114-115 (holding that the defendant's offenses did not constitute an episode of criminal conduct and that although the forgery-fraud incidents all occurred within a period of two days, and two of the incidents occurred within minutes of each other at the same location, they were all, nevertheless, separate incidents).

## II.

The next issue is whether Washington's sentence is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

Washington argues that the maximum sentence of eight years executed on Count I consecutive with his sentences on Counts II through XXI is inappropriate. Regarding the nature of the offense, Washington contends that not a single person suffered a visible or physical injury as a result of his actions. He argues that it was a financial crime, that the checks he produced on June 13, 2013, were for fictitious people, and that the checks were never cashed and not a single business or person lost any monies as a result of the forgery charges on Counts II through XXI. Regarding the character of the offender, Washington argues that he went on to obtain his GED and earn an Associate's Degree in Liberal Arts after completing only the tenth grade in high school.

The State argues that Washington's sentence is not inappropriate. The State asserts that Washington is in his mid-fifties and has proven himself not only willing to commit criminal offenses against people and property, but also refuses to abide by the laws of society and make efforts to change his behavior.

Our review of the nature of the offense reveals that Washington was involved in counterfeiting checks and forgery between June 2012 and June 2013. He not only prepared counterfeit payroll checks, he also selected the names of the multiple companies whose names were listed as payors on the counterfeit checks, designated how much money to give to the crew member who was cashing the check, and instructed Fett to have her crew wait until Friday after 5:00 p.m. to begin cashing the checks because the stores would then be busy. The victims in this case are requesting restitution. Specifically, Bane and Associates is

9

requesting $8,416.72 in total restitution to cover the losses incurred on fraudulent checks, and Kroger is requesting $9,845.32 in total restitution.

Our review of the character of the offender reveals that Washington has a substantial criminal history. As a juvenile, Washington was charged with two counts of felony robbery and one count of forgery, was adjudicated a delinquent, and his probation was revoked. Washington was sentenced for possession of marijuana as a felony in 1986, aggravated robbery and two counts of criminal attempt first degree murder in 1988, possession of marijuana as a misdemeanor in 2005, operating while intoxicated as a misdemeanor in 2008, and false informing as a class B misdemeanor in 2012. As an adult, Washington had his felony probation revoked once, and his misdemeanor suspended sentence modified twice and revoked once. According to the results of the Indiana Risk Assessment System, the presentence investigation report provides that Washington's overall risk assessment score places him in the very high risk to reoffend category.

After due consideration, we cannot say that the sentence imposed by the trial court is inappropriate in light of the nature of the offense and the character of the offender.

CONCLUSION

For the foregoing reasons, we affirm Washington's sentence.

Affirmed.

VAIDIK, C.J., and NAJAM, J., concur.

10