## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 09 2018, 9:48 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael R. Fisher
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Henry A. Flores, Jr.
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Christopher Dixon,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

August 9, 2018

Court of Appeals Case No.
18A-CR-303

Appeal from the Marion Superior Court

The Honorable Mark D. Stoner, Judge

Trial Court Cause No.
49G06-1706-F1-21166

**Baker, Judge.**

Christopher Dixon appeals his convictions for five counts of Level 1 Felony Child Molesting.[1] Dixon argues that there is insufficient evidence supporting one of the convictions and that the trial court gave an erroneous jury instruction. Finding sufficient evidence and no error, we affirm.

## Facts

Between July 2015 and November 2016, then-eleven-year-old A.J. lived with her great aunt and Dixon, who was her aunt's husband. During this time, Dixon molested A.J. multiple times. She testified to the following five occurrences:

- Dixon asked A.J. to come into his bedroom to help him with a cell phone issue. He asked her to perform oral sex and she complied.

- Once, late at night, Dixon and A.J. were in the family room when he demanded that she perform oral sex. She did so, and he then put Vaseline on his penis, took her clothes off, and—ignoring her saying "no"—rubbed his penis between her "butt cheeks." Tr. Vol. III p. 2-3.

- A third incident occurred when A.J. asked Dixon for chocolate cake. He said she could only have cake if she would perform oral sex. She complied.

- Once, A.J. was sleeping on the couch in the family room late at night. Dixon woke her up and rubbed his penis between her "butt cheeks." *Id.* at 6.

- A fifth incident occurred in Dixon's bedroom when he promised A.J. that he would talk to her aunt about A.J. having exclusive control of the

---

[1] Ind. Code § 35-42-4-3.

shared household computer if she would perform oral sex. She complied.

A.J. eventually told other family members about the molestations. They notified the police.

[3] On June 7, 2017, the State charged Dixon with five counts of Level 1 felony child molesting, one count of Level 4 felony child molesting, three counts of Level 5 felony child solicitation, and one count of Level 6 felony dissemination of matter harmful to minors. On January 23, 2018, after a two-day trial, the jury found Dixon guilty of five counts of Level 1 felony child molesting, one count of Level 4 felony child molesting, and one count of Level 5 felony child solicitation.[2] The trial court found that the Level 4 and Level 5 felonies merged into the Level 1 felonies. Ultimately, the trial court sentenced Dixon to consecutive terms of thirty years for two of the Level 1 felonies and to concurrent terms of forty years on the other three Level 1 felonies, for an aggregate sixty-year sentence. Dixon now appeals.

## Discussion and Decision

## I. Sufficiency

[4] Dixon first argues that the evidence is insufficient to support one of the Level 1 felony child molesting convictions. When reviewing the sufficiency of the

---

[2] The jury found Dixon not guilty of two of the child solicitation charges and the trial court dismissed the dissemination of matter harmful to minors charge.

evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the conviction and will neither assess witness credibility nor reweigh the evidence. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We will affirm unless no reasonable factfinder could find the elements of the crime proved beyond a reasonable doubt. *Id.*

Dixon argues, essentially, that the evidence does not support a conclusion that the first and fifth incidents set forth above were different incidents. Instead, he argues that the only possible conclusion is that they were the same incident. With respect to the first incident, A.J. testified as follows:

Answer: [Dixon] had walked in and he claimed, he said he needed help with his phone. And I usually helped him with his phone. So I went to his room to help him, well, I thought I was going to help him with his phone.

\*\*\*

Question: So what happened after you got to his room?

\*\*\*

Answer: Okay. So we had this computer—And I'm telling it like what happened. We had this computer and it was a gray computer and so when we get to his room to help him with his phone that's when I was asked to suck his penis.

Tr. Vol. II p. 246-47. With respect to the fifth incident, the following discussion occurred:

Question: You mentioned something about a computer previously?

Answer: Yes.

Question: Can you tell me what happened with the computer?

Answer: He had went up—Like what happened after—

Question: No. No. Sorry. You said one of the instances involved a computer?

Answer: Yes. And you want to know what happened before?

Question: I want to know what did he say about the computer?

***

Answer: He just told me he was going to [A.J.'s aunt] and ask if I could have it for myself.

Question: Now did he want you to do anything in exchange for the computer?

Answer: Yes.

***

Question: What did he want you to do in exchange for a computer?

Answer: Suck his penis.

Tr. Vol. III p. 40-41.

[6] Dixon contends that because A.J. referred to a computer in her description of the first incident, the only possible conclusion is that the first and fifth incidents are the same. We disagree. It is readily apparent that the first incident revolved around Dixon's claim of cell phone issues. At no point in describing the fifth incident did A.J. refer to a cell phone. Instead, the fifth incident revolved around bribery for the exclusive use of the household computer. And although A.J. briefly referred to the presence of a computer when describing the first incident, at no point did she mention any bribery related to that computer. We agree with the State that at most, the evidence presented a factual dispute to be resolved by the jury. Dixon's argument to the contrary requires us to reweigh the evidence, which we may not do. We find the evidence sufficient to support each of these convictions.

## II. Jury Instruction

[7] Dixon next argues that the trial court gave an erroneous jury instruction. When evaluating jury instructions on appeal, we look to whether the tendered instruction correctly stated the law, whether there is evidence in the record to support giving the instruction, and whether the substance of the proffered instruction is covered by other instructions. *Treadway v. State*, 924 N.E.2d 621,

636 (Ind. 2010). We will reverse only if the instructional error prejudiced the defendant's substantial rights. *Id.*

[8] To address concerns regarding jury unanimity, the trial court provided the following instruction:

> The Defendant, Christopher Dixon, is accused of being at least 21 years of age and of having performed or submitted to other sexual conduct against [A.J.], a child under the age of 14 years old.
>
> The State has presented evidence that the defendant may have committed more than one act of child molesting against [A.J.] during an unspecified general time period. Before you may find the defendant guilty of any count, you must all unanimously find and agree the State has proven beyond a reasonable doubt each element of that count as previously given to you. You may not combine or mix the events together to reach a single verdict. Each count must be considered separately, individually, and must be proven unanimously before you can convict.
>
> Specifically, you must find:
>
> AS TO COUNT 1:
>
> That the defendant committed the act of child molesting against [A.J.] involving having performed or submitted to other sexual conduct against [A.J.] for the first time in the defendant's bedroom.
>
> AS TO COUNT 2:
>
> That the defendant committed the act of child molesting against [A.J.] involving having performed or submitted to other sexual

conduct against [A.J.] in the family room where [A.J.] and the defendant were the only ones present.

AS TO COUNT 3:

That the defendant committed the act of child molesting against [A.J.] involving having performed or submitted to other sexual conduct against [A.J.] at or near the time of a birthday party.

AS TO COUNT 4:

That the defendant committed the act of child molesting against [A.J.] involving having performed or submitted to other sexual conduct against [A.J.] involving discussions about a computer.

AS TO COUNT 5:

That the defendant committed the act of child molesting against [A.J.] involving having performed or submitted to other sexual conduct against [A.J.] in the family room where Tyshawn and [A.J.]'s cousin were sleeping.

Appellant's App. Vol. II p. 149-51. Dixon argues that this instruction confused the jury because there is no factual basis for both Count 1 and Count 4; the foundation for this argument is the same contention he raised regarding sufficiency of the evidence.

[9] Initially, we note that Dixon has waived this argument for two reasons. First, he failed to tender his own proposed jury instruction on the issue. *See, e.g.*, *Baker v. State*, 948 N.E.2d 1169, 1178 (Ind. 2011) (holding that a failure to tender an instruction results in waiver of the issue for review). Second, while he objected to the instruction, he offered a different argument to the trial court

than he offers on appeal. *See, e.g.*, *Jenkins v. State*, 34 N.E.3d 258, 263 (Ind. Ct. App. 2015) (appellant waives argument if he made one argument to the trial court and presents a different one on appeal), *trans. denied*.

[10] Waiver notwithstanding, we do not find Dixon's argument to be persuasive. As noted above, we found the evidence sufficient to support Dixon's convictions for both incidents, so we disagree that the instruction is confusing because of a lack of factual basis for both molestations. Nor do we find the instruction as a whole confusing or misleading in any way. We agree with the State that the instruction provided the jury with helpful direction and guidance as to what, specifically, it had to find to render a guilty verdict for each count. The trial court's decision to give this jury instruction was not erroneous.

[11] The judgment of the trial court is affirmed.

May, J., and Robb, J., concur.