**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jun 30 2014, 10:03 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**JONATHAN O. CHENOWETH**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELLEN H. MEILAENDER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

JAMES PELLO,                          )
                                      )
    Appellant-Petitioner,         )
                                      )
      vs.                      )    No. 20A03-1312-PC-488
                                      )
STATE OF INDIANA,                     )
                                      )
    Appellee-Respondent.          )

APPEAL FROM THE ELKHART SUPERIOR COURT
The Honorable George W. Biddlecome, Judge
Cause No. 20D03-1212-PC-118

**June 30, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Chief Judge**

**Case Summary**

In 2007, James Pello had a jury trial for two counts of child molesting and one count of dissemination of matter harmful to minors. At trial, the victim testified, and Pello's videotaped statement, during which he made several admissions, was played for the jury. The jury convicted him as charged, and the trial court sentenced him to sixty-one years. We affirmed Pello's convictions and sentence on direct appeal. He later sought post-conviction relief arguing that counsel was ineffective for failing to ensure that he received unanimous verdicts on the child-molesting counts. The post-conviction court denied his petition.

We find that Pello has failed to establish the prejudice prong of his ineffective-assistance claim. Specifically, there is not a reasonable probability that the result of the trial would have been any different had the jury been instructed that it had to unanimously agree on the specific act Pello committed. We therefore affirm the post-conviction court.

**Facts and Procedural History**

The underlying facts in this case, taken from this Court's opinion on direct appeal, are as follows:

> In 2004, K.G. was in the third grade. K.G. knew Pello since she could remember and referred to him as "Grandpa." Pello was not, in fact, K.G.'s grandfather but rather a good friend of the family. K.G. visited Pello every other weekend. During these visits, K.G. spent the night. On many occasions, Pello made K.G. watch "[n]asty movies," that is, "grownup movie[s]" with "[u]nclothed" people doing "nasty" things. While the movie was playing, Pello undressed K.G. and himself, and the two sat by each other on the couch. Pello touched K.G. at a place she identified as "where I pee" with his fingers and his "di**." Pello either got on top of K.G. or sat K.G. on his lap and then Pello placed his penis "where [K.G.] peed." Pello also licked the same area with his tongue. On another occasion, Pello tried to insert his penis into K.G.'s "butt." In addition, Pello put his penis in K.G.'s

2

mouth.  K.G. told Pello that these various activities hurt her and pulled away or resisted him.  As a result, Pello either pulled K.G. back or let her go.

When K.G. was in the latter part of her third grade year, she told her mom what happened with Pello, and when she was in the fourth grade, she told the principal at her school what happened with Pello.  She waited so long to tell her mother because she was afraid.

In August 2006, Pello went to the Elkhart Police Department to give a statement because of the allegations that had surfaced and met with Detective Michal Miller of the Sex Crimes Unit.  The interview with Pello was videotaped.  During the interview, Pello admitted to showering with K.G., "lick[ing] her privates," watching pornographic videos, K.G. putting her "mouth" on his "penis," rubbing up against K.G.'s body with his "penis," and ejaculating on at least five different occasions.  State's Ex. 3 (videotape). Thereafter, the State charged Pello with [Count I:] Class A felony child molesting (deviate sexual conduct: oral sex), [Count II:] Class C felony child molesting (fondling or touching), and [Count III:] Class D felony dissemination of matter harmful to minors (pornography).  At Pello's December 2007 jury trial, which was nearly three years after the events, K.G. testified, and Pello's videotaped statement was played.

*Pello v. State*, No. 20A03-0803-CR-137 (Ind. Ct. App. Oct. 10, 2008) (citations and footnotes omitted), *trans. denied*.

During closing arguments, the State made the following arguments for Count I: Class A felony child molesting, which was based on deviate sexual conduct for oral sex:

> [Pello] tells you that they would take showers together.  He's known her since she was in diapers.  He stated, "I licked her privates a couple of times," which was later clarified to be her vaginal area.  There's your Count I right there.
> He goes on later to talk about how his penis would be placed into K.G.'s mouth.  There's another Count I element, whether you choose to see the oral sex in the form of licking her vagina, or the oral sex in the form of having his penis placed in her mouth.  There is the evidence for Count I.

Trial Tr. Vol. II. p. 110.  As for Count II: Class C felony child molesting, which was based on fondling or touching, the State argued:

> As far as the second count, the fondling and touching, you will remember in the video, that [Pello] would cause her to take her hand and place it on his penis.  You also remember in the video through his own words that he would

3

take his penis and he would rub it on her belly. He would rub it by her butt, and he would rub also on her front area. That's touching and fondling.

*Id.* at 111. Defense counsel did not object to either of the State's arguments.

The trial court gave several final instructions. For Count I, the trial court instructed the jury that Pello must have knowingly "[p]erformed or submitted to deviate sexual conduct with [K.G.]" when she was under fourteen years old and he was at least twenty-one years old. Appellant's Trial App. p. 83. "Deviate sexual conduct" was defined as "an act involving the sex organ of one person and the mouth of another person." *Id.* at 89. For Count II, the trial court instructed the jury that Pello must have knowingly "performed or submitted to any fondling or touching of either [K.G.] or the defendant" when she was under fourteen years old with the intent to arouse or satisfy the sexual desires of either K.G. or the defendant. *Id.* at 84. In addition, the trial court instructed the jury: "Your verdict must represent the considered judgment of each juror. In order to return a verdict of guilt or innocence you must all agree."[1] *Id.* at 108. Defense counsel did not object to these instructions or tender any of his own regarding jury unanimity. The jury convicted Pello of all three counts as charged, and the trial court sentenced the sixty-five-year-old Pello to an aggregate sentence of sixty-one years.

Pello sought a direct appeal raising two issues: (1) the trial court erred in allowing the State to ask twelve-year-old K.G. a leading question and (2) his sixty-one-year sentence was inappropriate. We found that the trial court did not abuse its discretion in allowing the

---

[1] At the beginning of voir dire, the trial court explained to the panel, "The verdict of the jury must be unanimous." Trial Tr. Vol. I p. 10.

State to ask K.G. the question and that Pello's sentence was not inappropriate. We affirmed Pello's convictions and sentence in 2008.

Pello filed a pro se petition for post-conviction relief in 2012, which was amended by counsel in 2013. Pello made two allegations. First, he alleged that his trial counsel was ineffective for not objecting to those portions of the prosecutor's closing argument identified above and for not tendering a more specific instruction on jury unanimity. Second, he alleged that his appellate counsel was ineffective for not arguing on direct appeal that the trial court's failure to instruct the jury that it must unanimously agree on the specific act that the defendant committed was fundamental error. Following a hearing, the post-conviction court found that Pello failed to prove that either his trial or appellate counsel was ineffective. Appellant's App. p. 63.

Pello now appeals.

## Discussion and Decision

Pello contends that the post-conviction court erred in denying his petition for post-conviction relief. Post-conviction proceedings do not provide criminal defendants with a "super-appeal." *Garrett v. State*, 992 N.E.2d 710, 718 (Ind. 2013). Rather, they provide a narrow remedy to raise issues that were not known at the time of the original trial or were unavailable on direct appeal. *Id.* The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5); *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Fisher*, 810 N.E.2d at 679. To prevail from the denial

of post-conviction relief, a petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Garrett*, 992 N.E.2d at 718.

To establish a post-conviction claim alleging a violation of the Sixth Amendment right to effective assistance of counsel, a defendant must establish the two components set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). "First, a defendant must show that counsel's performance was deficient." *Strickland*, 466 U.S. at 687. This requires a showing that counsel's representation fell below an objective standard of reasonableness and that counsel made errors so serious that counsel was not functioning as "counsel" guaranteed to the defendant by the Sixth Amendment. *Id.* "Second, a defendant must show that the deficient performance prejudiced the defense." *Id.* This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial, meaning a trial whose result is reliable. *Id.* To establish prejudice, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.*

Pello argues that his trial counsel was ineffective "by failing to ensure that the jury returned unanimous verdicts on counts I and II." Appellant's Br. p. 9. Pello asserts that while all jurors voted to convict him on Count I, some may have done so upon finding that he caused K.G. to perform deviate sexual conduct, while others may have done so upon finding that he caused her to submit to such conduct. Likewise, while all jurors voted to

6

convict Pello on Count II, some jurors may have done so upon finding that he caused K.G. to fondle him, while others may have done so upon finding that he caused her to submit to fondling. Pello claims this is a problem because performing *and* submitting to deviate sexual conduct (as well as performing *and* submitting to fondling) are distinct crimes, not merely distinct means of committing a single crime.

Although the United States Supreme Court has never held that jury unanimity is a requirement of due process of law, *see Johnson v. Louisiana*, 406 U.S. 356, 359 (1972),[2] Indiana has long required that a verdict of guilty in a criminal case "must be unanimous." *Baker v. State*, 948 N.E.2d 1169, 1173-74 (Ind. 2011) (citing *Fisher v. State*, 259 Ind. 633, 291 N.E.2d 76, 92 (1973)). While jury unanimity is required as to the defendant's guilt, it is not required as to the theory of the defendant's culpability. *Taylor v. State*, 840 N.E.2d 324, 333 (Ind. 2006).

After Pello's trial and appeal, our Supreme Court decided *Baker*, a case similar to the one before us. Baker was charged with one count of child molesting for each of the three alleged victims; however, the jury heard evidence of multiple acts of molestation for each victim. Baker argued that some jurors may have relied on different evidence than the other jurors to convict him on each of the three counts. Our Supreme Court held that the State may, in its discretion, designate a specific act or acts on which it relies to prove a particular charge. *Baker*, 948 N.E.2d at 1177. However, if the State decides not to do so, then the jurors should be instructed that in order to convict the defendant, they must either unanimously agree that the defendant committed the same act or acts or that the defendant

---

[2] *But see Richardson v. United States*, 526 U.S. 813, 817 (1999) ("[A] jury in a federal criminal case cannot convict unless it unanimously finds that the Government has proved each element.").

committed all of the acts described by the victim and included within the time period charged. *Id.* Our Supreme Court added that the general jury-unanimity instruction—which states "Your verdicts must represent the considered judgment of each juror. In order to return a verdict of guilt or innocence you must all agree"—is not sufficient.[3] *Id.* at 1178.

Baker's jury received only the general jury-unanimity instruction, which did not advise it that in order to convict Baker, it must either unanimously agree that he committed the same act or acts or that he committed all of the acts described by the victims and included within the time period charged. *Id.* But because Baker neither objected nor offered an instruction of his own, our Supreme Court analyzed the issue using the fundamental-error doctrine. The Court found that because the only issue was the credibility of the victims and the jury resolved the basic credibility dispute against Baker and would have convicted him of any of the various offenses shown by the evidence to have been committed, there was no fundamental error. *Id.* at 1179.

Here, the State argues that trial counsel was not deficient for failing to anticipate this 2011 case at the time of Pello's 2007 trial. However, we do not need to decide whether *Baker* created a new rule of law or whether *Baker* was consistent with earlier cases. Although the two parts of the *Strickland* test are separate inquiries, a claim may be disposed of on either prong. *Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006). That is, the object of an ineffectiveness claim is not to grade counsel's performance; if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, then that course should be followed. *Id.*

---

[3] Our Supreme Court noted that a slightly modified version of California's instruction was a "useful model for this jurisdiction." *Baker*, 948 N.E.2d at 1177 n.4.

We find that there is not a reasonable probability that the result of the trial would have been any different had the jury been instructed that it had to unanimously agree on the specific act Pello committed. This is because the evidence of Pello's guilt in this case is overwhelming. During the interview with Detective Miller, Pello admitted to showering with K.G., "lick[ing] her privates," watching pornographic videos, K.G. putting her "mouth" on his "penis," rubbing up against K.G.'s body with his "penis," and ejaculating on at least five different occasions. State's Ex. 3 (videotape). Notably, Pello did not challenge his confession on appeal or on post-conviction. And this is not a case where the defendant admitted to some of the charged acts and disputed others. Instead, Pello admitted to performing deviate sexual conduct by performing oral sex on K.G. and submitting to deviate sexual conduct by receiving oral sex from K.G. as well as touching and fondling K.G. and being touched and fondled by K.G. Given this evidence, there is no reason why the jury would have been divided as to which specific act or acts were committed. The evidence shows that all the acts were committed, and the jury did not have to make a credibility determination to reach that conclusion. In *Baker*, our Supreme Court found no fundamental error because, "Ultimately the jury resolved the basic credibility dispute against [Baker] and would have convicted the defendant of *any* of the various offenses shown by the evidence to have been committed." 948 N.E.2d at 1179 (quotation omitted). The same rationale applies here. We acknowledge that the bar establishing fundamental error is higher than that for prejudice of ineffective assistance of trial counsel. *See Benefield v. State*, 945 N.E.2d 791, 805 (Ind. Ct. App. 2011). In other words, it is easier to prove the prejudice prong for an ineffective-assistance-of-counsel claim than

9

fundamental error. However, the nature of the evidence in this case leads only to the conclusion that counsel's performance did not impact the outcome: because Pello himself joined the victim in saying that all of the charged acts happened, there is no reason to think that the jury did not take their word for it. We therefore affirm the post-conviction court's denial of Pello's petition for post-conviction relief.[4]

Affirmed.

NAJAM, J., and BROWN, J., concur.

---

[4] Pello also argues that his appellate counsel was ineffective for failing to argue on direct appeal that it was fundamental error that the jury was not instructed that it had to unanimously agree on the specific act Pello committed for Counts I and II. For the same reasons as above, we find no fundamental error on this issue, *see Baker*, 948 N.E.2d at 1178-79; therefore, appellate counsel was not ineffective for failing to raise this issue on direct appeal.